[Cite as *In re Estate of Green*, 2018-Ohio-710.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY


IN THE MATTER OF: THE ESTATE OF:          :
LENNA M. GREEN, DECEASED                          CASE NOS.  CA2017-04-046
                                                                    :                        CA2017-04-047

                                                                    :         O P I N I O N
                                                                              02/26/2018

                                                                    :

                                                                    :


APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
PROBATE DIVISION
Case No. 20101114


Danny M. Green (A687591), Chillicothe Correctional Institution, P.O. Box 5500, 15802 State Route 104 North, Chillicothe, Ohio 45601, appellant/cross-appellee, pro se

David D. Brannon, 130 West Second Street, Suite 900, Dayton, Ohio 45402, for appellee/cross-appellant, Jennifer M. Ritchie, Administrator


**S. POWELL, J.**

{¶ 1}  Appellant/cross-appellee, Danny M. Green, appeals from the decision of the Warren County Court of Common Pleas, Probate Division, in a case involving the distribution of assets from the estate of Lenna M. Green.  Appellee/cross-appellant, Jennifer M. Ritchie, as the administrator with Will Annexed of the estate, also appeals from that decision.  For the reasons outlined below, we affirm the probate court's decision as modified.

**The Parties**

{¶ 2}   Lenna M. Green ("Lenna") and Graydon L. Green ("Grady") were married in Springfield, Ohio on June 5, 1965.   During their marriage, Lenna and Grady had four children; namely, Danny M. Green ("Danny"), Bryan L. Green ("Bryan"), Jennifer M. Ritchie ("Jennifer"), and Gwendolyn S. Kellum ("Gwendolyn").   After being married for over forty years, Lenna and Grady were divorced on March 19, 2009.  As part of their divorce decree, Lenna was named the "sole owner" of the family's business interests in Pools & More ("Pools & More"), a business that engaged in the sale, distribution, and servicing of pools and pool supplies.

{¶ 3}   On October 20, 2009, Lenna died leaving a last will and testament bequeathing her estate assets equally to her four children, Danny, Bryan, Jennifer, and Gwendolyn.  Since Lenna's passing, it is undisputed that Bryan, who at one time served as an attorney for the estate, gave up the practice of law after placing his law license on inactive status.  The record indicates Bryan now works at a Kohl's warehouse and picks up side jobs working on pools.  It is also undisputed that Gwendolyn has spent a significant amount of time behind bars due to her ongoing battle with drug addiction, whereas Danny, who appears in this case pro se, is currently serving nine years in prison after being convicted of rape.[1]  Although this court is unable to comment on the current status of their relationship, suffice it to say that Grady, Danny, Bryan, Jennifer, and Gwendolyn were not on good terms after Lenna's passing.

**Facts and Procedural History**

{¶ 4}   As the probate court stated, "[t]o say this [case] is a complete and utter mess

---

1. Danny was sentenced to prison on August 5, 2013 and is currently scheduled to be released on January 20, 2022.

is a major understatement." We agree. We also agree with the probate court's assertion that "[i]f anyone was looking for a case which would underscore the importance of following court procedure, they wouldn't have to look any further than this case."[2] Nevertheless, although faced with what the probate court considered the most poorly managed and mishandled estate it had ever seen, after undertaking a thorough review of the record properly before this court, including several hundred pages of bank records, we find the following facts established.

{¶ 5} On May 3, 2010, several months after Lenna's passing, Danny filed an application with the probate court requesting he be named the administrator with Will Annexed of his mother's estate. In support of this application, Danny submitted his mother's last will and testament, which, as noted above, bequeathed her estate's assets equally to her four children, Danny, Bryan, Jennifer, and Gwendolyn. Approximately two weeks later, on May 25, 2010, the probate court appointed Danny as the administrator of the estate and his brother, Bryan, was retained as counsel for the estate. At the time Bryan was retained as counsel for the estate, although not generally working on probate and estate matters, it is undisputed that Bryan was a properly licensed attorney within the State of Ohio.

{¶ 6} On March 30, 2011, after an appraiser had been appointed for the estate, Danny submitted an inventory and appraisal of the estate's assets to the probate court indicating the estate had six assets worth a grand total of $548,500. Specifically, the schedule of assets Danny submitted to the probate court listed the following:

---

2. The probate court also referred to this case as "a load of crap that's being dumped in my lap, and I'm being told to unravel it," later characterizing this case as "a cluster. I've never seen an estate so poorly managed and handled in my life. Ever." Concluding, the probate court then stated that "when this thing gets re-typed for the 12th District, I want them to understand what kind of a mess I've inherited." After reviewing this case ourselves, this court certainly understands the probate court's frustrations.

**SCHEDULE OF ASSETS**

| Item | Appraised | Value |
|---|:---:|:---:|
| 9093 Heritage Rd. | ✓ | $119,900 |
| 1/2 interest of 40 acres on Friend Rd. | ✓ | 75,000 |
| Debt owed From Grady Green upon Sale of Property | | 156,000 |
| Pools & More Business (84% Interest) | ✓ | 187,600 |
| 2000 Lincoln Navigator | | 4,000 |
| Household furnishings | | 6,000 |

{¶ 7} As a point of contention, Pools & More was appraised by Gail Berry, a certified appraiser employed by Sibcy Cline Realtors. According to Berry, at the time of Lenna's death, Pools & More had a total value of $223,300, "[a]ll value being placed on inventory and no dollar value on the business entity." In explaining this appraisal further, Berry stated, in pertinent part, the following:

Justification for valuing the business entity at $0 is as follows:

1) This business, as any business, is highly dependent upon the knowledge and expertise of the owners/managers, and therefore; marketable only to persons of trade specific knowledge.

2) Pools & More is acquired through divorce action. Court proceedings for previous 2 years regarding said divorce, gave the owner at that time, ample time to engage in behavior that has diminished the reputation and name value of Pools & More.

3) Following the death of Lenna M. Green; landlord of current location of Pools & More (ex-spouse to Lenna M. Green) has engaged in every attempt to evict this company from current location and/or raise the rent to a level unsustainable by the company. Should the landlord succeed in evicting the subject company from present location of business, Pools & More would not have a place to further conduct business.

4) It has been discovered, for the past nine (9) years previous to Lenna M. Green acquiring the company, Mr. Green (previous owner), failed to file corporate income tax returns. This neglect successfully makes this company more of a liability than an asset.

- 4 -

{¶ 8} Concluding, Berry stated that it was her understanding that Bryan owned a "16% interest in Pools & More, making the value of Pools & More to the estate $187,600."[3] Not until many years later does it appear anybody ever objected to Berry's appraisal of Pools & More at $233,300, all of which was based on the business's inventory and not the business itself, nor to Berry's appraisal of the Friend Road property at $75,000.

{¶ 9} In the years following, Danny and Bryan distributed the six listed estate assets to themselves and to their two sisters, Jennifer and Gwendolyn. Although there were some exceptions, these distributions were usually done without the probate court's knowledge or approval. For instance, pursuant to what they believed to be a global agreement, Danny and Bryan took over the business operations of Pools & More in exchange for Jennifer receiving their mother's Heritage Road house. Unfortunately, although making every effort to keep the business afloat, Pools & More floundered, thus leading Grady, the owner of the property where the business was located, to file a forcible entry and detainer suit against the business. Although the suit was later settled, Pools & More was nevertheless dissolved and reestablished a short time later as BDG Enterprises, LLC dba Leisure Town.[4]

{¶ 10} On January 3, 2013, Danny submitted an accounting to the probate court indicating he had distributed the Heritage Road property to Jennifer and, after he, Jennifer, and Gwendolyn executed a series of quitclaim deeds, the Friend Road property to Bryan. Following these distributions, Danny submitted additional accountings to the probate court indicating he had also distributed the 2000 Lincoln Navigator and the $156,000 debt Grady

---

3. As noted by the probate court, the appraised value of Pools & More, Inc. listed on Danny's original schedule of assets was a rounded-up from the exact amount of $187,572, an amount representing Lenna's purported 84% interest in the business at the time of her death.

4. Although it does not appear to have any impact on this case, we note that Grady, without any authority to do so, caused the dissolution of Pools & More by falsely representing himself as Pools & More sole owner and president in filings submitted to the Ohio Secretary of State.

owed to the estate to Gwendolyn. These additional accountings, one of which was considered Danny's final accounting of the estate, further indicated that Jennifer received her mother's household furnishings and a 2000 Ford Windstar, a vehicle the parties agree had never been listed as an estate asset.[5] Shortly after these distributions were made, Bryan sold the Friend Road property to a nearby farmer for $100,000. It is undisputed that the farmer who purchased the Friend Road property had previously leased that same property in 2011 and 2012 for a total of $7,400.

{¶ 11} On January 15, 2014, Jennifer sent a letter to the probate court expressing her concern that her interest in her mother's estate may be impacted by Danny's recent imprisonment following his conviction for rape. As part of this letter, Jennifer also stated, in pertinent part:

> I am aware that there is a long standing familial feud between my father "Grady" and my brothers, however it has nothing to do with me and yet I fear that as this feud continues I may be simply collateral damage in a family feud where my interest is of no concern.

> Four years ago my father stood in front of me and told me that he would "bankrupt" the estate before he would allow the four "heirs" to take what he considered "his money." My mother passed a few short months after their divorce was final and my father to this day blames my brothers for it citing that they "talked her into it so that they could take his (Grady's) business away from him."

{¶ 12} On February 28, 2014, upon learning Danny was in prison and Bryan was no longer a practicing attorney, the probate court appointed Jennifer to replace Danny as the administrator of the estate. Jennifer accepted her appointment as the administrator on March 19, 2014. A few months later, on July 10, 2014, Jennifer, as the administrator of the

---

5. The record indicates Gwendolyn had previously sold her interest in her mother's estate to her father Grady for $80,700, an agreement that required Grady to pay Gwendolyn $20,200 at the time the agreement was signed with the remaining $60,500 paid in 55 monthly installments of $1,100. The record is unclear as to how much money, if any, Grady has paid to Gwendolyn under the terms of this agreement.

estate, filed a complaint against her father, Grady, and her three siblings, Danny, Bryan, and Gwendolyn, claiming they had concealed, embezzled, wrongfully retained, and/or wrongfully depleted the assets of the estate; most notably the estate's interest in the now defunct Pools & More. The complaint was brought pursuant to R.C. 2109.50, which provides that any interested party may file a proceeding in the probate court against any person alleged to have concealed, embezzled, conveyed away or in possession of monies or assets of an estate.

{¶ 13} After a number of delays, the matter was tried to the probate court bench on October 11, 2016. Due to time constraints, the matter was then continued in progress until January 24, 2017 before being completed the following day on January 25, 2017. During trial, the probate court heard testimony from Grady, Danny (via video conference from the Chillicothe Correctional Institution), Bryan, Jennifer, and the nearby farmer who purchased the Friend Road property.[6] We note, however, that prior to hearing any witness testimony, the probate court rejected Danny and Bryan's claim that their mother's estate included only an 84% interest in Pools & More's "outstanding shares of stock." The probate court instead found that based on the language contained in Lenna and Grady's divorce decree, "[e]verything about that business is part of this estate," such as its inventory and equipment, most of which had since been sold, "and we're going to hear about it." Concluding, the trial court stated:

> I don't like it when families help to themselves, uh, and they don't follow the process and they throw it at me and I'm expected to read people's minds, and I have to decide what's true or not based upon what I hear in this witness box.
>
> And I guarantee you, I'm going to hear at least a hundred things that you all are not going to agree to. And you're going to look

---

6. Noticeably absent from these proceedings was Gwendolyn, who the record indicates was either in prison, one of several drug rehabilitation programs, or the county jail.

at me and say, well, you tell me what happened. And I'm going to say, folks, I didn't even know you back then. I don't know you now. I don't know who's telling me the truth and who's not. Sometimes you can pick up on a few cues and see. I get to weigh credibility. But we're going to go back seven years. It's a mess.

The record also indicates that after reconvening on January 24, 2017, the probate court prohibited Jennifer's expert witness from testifying at trial. The probate court also struck from the record that expert's appraisal of Pools & More that Jennifer attempted to submit as evidence. In so holding, the probate court stated:

> [Y]ou can't just – when I start a trial and I have to continue it in progress because of a time limitation, that freezes everything. You don't get to go out there and shore up the rest of your evidence and pick up additional facts and additional witnesses, especially one as serious as an expert that was just thrown at them at the last minute.

{¶ 14} After reviewing the lengthy transcript of the probate court proceedings, it is clear that Danny and Bryan believed they were administering the estate pursuant to a "global" agreement between themselves and their two sisters, Jennifer and Gwendolyn. However, not only did Danny and Bryan not obtain the probate court's approval to make many of these distributions, Jennifer specifically testified that she never entered into any such "global" agreement regarding the distribution the estate. Rather, as Jennifer testified:

> It wasn't. It was never really talked about. I mean, we didn't like say, okay, well, you're going to get Friend Road and you're going to get Heritage Road and you're going to get this and you're going to get that. That didn't happen. Not around me.

{¶ 15} Jennifer also testified that whenever she asked Danny and Bryan about the administration of the estate that she "was always told, we got this; I can explain it to you, but I can't understand it for you; just trust me." To this, Danny stated that "[t]here's a lot of Jenny's testimony that is absolutely a flat lie." Understandably frustrated, the probate court responded by stating, "I don't think I've ever seen anything handled so poorly in my life.

- 8 -

And because of that, now we're going to have to try and – and resolve all these issues." Concluding, the probate court stated, "[e]verything that happened in this case is a catastrophic mistake, everything, from the start until now."

{¶ 16} On February 22, 2017, the probate court issued a decision finding Danny and Bryan guilty of concealing a portion of their mother's estate, particularly that of Pools & More and the Friend Road property. Specifically, as relevant to those two assets, the probate court determined, in pertinent part, the following.

**Pools & More**

{¶ 17} As it relates to Pools & More, the probate court stated:

> The Court would have expected to receive something a little more formal than what was presented by Bryan as evidence of his deal to purchase part of the pool business from Grady and Lenna. However, the Court is convinced that the purchase was underway and by the time Lenna passed away, Bryan had paid enough money to become a 16% shareholder in Pools and More. The Court makes this finding notwithstanding the divorce decree states that Lenna was to be the "sole" owner of Pools and More. The dollar amount of this assets was derived by an appraiser. In her professional opinion, only the inventory and equipment had a value. The business itself was listed at zero dollars. The total amount for the inventory and equipment was appraised to be $223,300. The Court finds that the Estate only owned 84% of this, and based upon this appraisal, $187,572 should have flowed through the Estate as an Estate asset.

Continuing, the probate court stated:

> Based upon the evidence presented, the Plaintiff failed to prove to the Court that the continued operation of the pool business(es) yielded money that would be an Estate asset. Clearly, money came in and money went out. Expenses were paid and salaries were taken. However, upon close examination of the accountings that were provided for Pool (sic) and More and its successor company (which were voluminous), the Court finds that the income stream and outlay of expenditures were merely a wash and valueless to the Estate.

Concluding, the probate court found Danny guilty of concealing 50% of the appraised value

of Pools & More's inventory and equipment in the amount of $111,650, whereas Bryan, who, as noted above, the probate court found had a 16% ownership interest in the business, was found guilty of concealing 34% of Pools & More's inventory and equipment in the amount of $75,922.

**Friend Road Property**

{¶ 18} As it relates to the Friend Road property, the probate court found no harm in how the property was deeded to Bryan through a series of quitclaim deeds from Danny, Jennifer, and Gwendolyn before being sold to the nearby farmer for $100,000. However, the probate court did take exception to the rents Danny and Bryan received from leasing the Friend Road property to that farmer. Specifically, the probate court stated:

> What the Court does find fault in relates to the rent monies that were received prior to the property being quit-claimed over to Bryan. Fifty percent of this land belonged to Bryan individually and the remaining fifty percent belonged to the Estate. Half of the rent money received until the entire property became Bryan's should have been included as an asset of the Estate. Instead, Danny and Bryan kept the rents for themselves, not giving any of it to their sisters Jennifer and Gwen.

Upon finding Danny and Bryan guilty of concealing the rent money received from the Friend Road property, the probate court then stated:

> The final issue involving this property involves Bryan selling this for an amount greater than the appraised value. This is immaterial to the within matter. No one gave me any reason to believe the appraised value was incorrect; therefore, it is simply Bryan's good fortune that he sold that property for more than what it was worth at the time of Lenna's death.

{¶ 19} On March 3, 2017, Danny moved the probate court to issue findings of fact and conclusions of law regarding (1) its decision finding he and Bryan had concealed assets belonging to Pools & More from the estate, and (2) its decision regarding the rents he and Bryan received from leasing the Friend Road property to the nearby farmer. To that, on

March 8, 2017, the probate court issued findings of fact and conclusions of law as it relates

to these two assets as follows.

### Pools & More

{¶ 20} Initially, as it relates to Pools & More, the probate court stated:

> Danny Green questions how the Court concluded that the inventory and equipment of Pools and More were assets of the Estate and therefore concealed.
>
> The Court notes that when Danny Green was the Fiduciary, he himself listed on the Inventory and Appraisal, and more specifically on the Schedule of Assets, that Pools and More Business (84% interest) was an asset of the Estate and listed a value of $187,600. This amount was derived from an appraisal by Gail Berry who placed this value on the inventory of the business and no money for the business entity itself.
>
> Throughout the life of this case, this item has always been listed as an Estate asset. Therefore, based upon the Fiduciary's classifying this as an Estate asset, and the testimony presented during the hearings, the Court concluded that the inventory listed for Pools and More was an Estate asset.

Concluding, the probate court stated:

> Further, the fact that none of this money was ever paid into the Estate and the inventory was kept by Danny and Bryan Green for their sole benefit was sufficient for the Court to conclude that the asset was concealed.

### Friend Road Property

{¶ 21} Next, as it relates to the Friend Road property, the probate court stated that

upon further review:

> [T]he Court agrees that in Ohio, title to real estate passes by operation of law at the moment of decedent's death. * * * Additionally, rent money from this property, likewise belongs to the heirs and not to the Estate. It is clear that these monies were kept by Danny and Bryan and not shared with Jennifer and Gwen; however, since these monies were not Estate assets, Danny and Bryan cannot be guilty of concealing them.

{¶ 22} On March 8, 2017, Danny moved the probate court for a new trial. In support

of this motion, Danny argued the probate court's decision "was not sustained by the weight of the evidence, was contrary to law, and was excessive, appearing to have been given under the influence of prejudice."  Later that same day, the probate court issued a decision denying Danny's motion for a new trial upon finding the record was devoid of any evidence indicating it had acted out "of passion or prejudice against any of the parties."

**Analysis**

{¶ 23}  Both Danny and Jennifer, as the administrator of the estate, now appeal from the probate court's decision, raising a total of five assignments of error for review.  As part of their assignments of error, it is clear that Danny and Jennifer disagree with the steps the probate court took in order to craft a fair and equitable decision in hopes of finally putting this case to bed.  After a thorough review of the record, we commend the probate court for its efforts in tackling this case head-on by providing a well-reasoned and thoughtful decision for our review.  Surely, just as the probate court warned, when dealing with such contentious issues, it is nearly impossible to render a decision that is satisfactory to all parties involved. Nevertheless, while we certainly understand each of the parties' positions, when considering the facts and circumstances of this case, we affirm the probate court's decision as modified.

**Standard of Review**

{¶ 24} Although concealed through a number artful disguises, Danny and Jennifer generally contend that several of the probate court's findings leading up to its ultimate decision to find Danny and Bryan guilty of concealing estate assets were against the manifest weight of the evidence.  "The standard of review for a manifest weight challenge in a civil case is the same as that applied to a criminal case."  *Dunn v. Clark*, 12th Dist. Warren No. CA2015-06-055, 2016-Ohio-641, ¶ 8, citing *Eastley v. Volkman*, 132 Ohio St.3d

328, 2012-Ohio-2179, ¶ 17. Thus, in considering a manifest weight challenge, a reviewing court weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the finder of fact clearly lost its way and created a manifest miscarriage of justice warranting reversal and a new trial ordered. *Hacker v. House*, 12th Dist. Butler No. CA2014-11-230, 2015-Ohio-4741, ¶ 21, citing *Eastley* at ¶ 20. A judgment will not be reversed as being against the manifest weight of the evidence where the judgment is supported by some competent, credible evidence going to all essential elements of the case. *Sterling Constr., Inc. v. Alkire*, 12th Dist. Madison No. CA2016-12-032, 2017-Ohio-7213, ¶ 8.

**Statutory Concealment Action and R.C. 2109.50**

{¶ 25} As noted above, Jennifer, as the administrator of the estate, filed a complaint pursuant to R.C. 2109.50 alleging her father, Grady, and her three siblings, Danny, Bryan, and Gwendolyn, had concealed, embezzled, wrongfully retained, and/or wrongfully depleted the assets of the estate. As noted above, pursuant to that statute, any interested party may file a proceeding in the probate court against any person alleged to have concealed, embezzled, conveyed away or in possession of monies or assets of an estate. A claim brought pursuant to R.C. 2109.50 "is a special proceeding of a summary, inquisitorial character whose purpose is to facilitate the administration of estates by summarily retrieving assets that rightfully belong there." *Id.* at ¶ 14, citing *In re Estate of Fife*, 164 Ohio St. 449 (1956), paragraphs one and two of the syllabus. As a result, "the inquiry under R.C. 2109.50 focuses on the ownership of the asset and whether possession of the asset is being impermissibly concealed or withheld from the estate." *Wozniak v. Wozniak*, 90 Ohio App.3d 400, 407 (9th Dist.1993). A party who is found guilty of misappropriating estate assets may have a judgment in the amount of the proceeds or

assets issued against them along with a ten percent statutory penalty. *State v. Harmon*, 5th Dist. Tuscarawas No. CA2016AP080042, 2017-Ohio-320, ¶ 13.

**The Parties' "Global" Agreement**

{¶ 26} Danny argues the probate court erred by finding there was no "global" agreement between himself and his three siblings, Bryan, Jennifer, and Gwendolyn, as to how the estate should be distributed. In support of this claim, Danny argues the probate court improperly "made up its mind" on several issues before any witness testimony had been heard. Danny also argues that by finding no "global" agreement was formed, the probate court ignored the "only reasonable explanation" for how he and Bryan decided to distribute the estate assets. Thus, according to Danny, by finding there was no "global" agreement between the parties, the probate court allowed Jennifer to perpetuate her "money grab" against the estate. We disagree with Danny's claim.

{¶ 27} Danny's argument raises a number of novel issues, none of which are supported by the record. For instance, while Danny claims the probate court improperly "made up its mind" on several issues before any witness testimony had been heard, this ignores the fact that the probate court then sat through three full days of trial hearing seemingly countless hours of testimony from not only Danny himself, but also from his siblings Bryan and Jennifer, as well as his father Grady. Moreover, while it is certainly true that Danny and Bryan both testified that a global agreement had been reached between the parties as to how their mother's estate should be distributed, Jennifer explicitly testified that she was not privy to any such agreement. Again, as Jennifer testified:

> It wasn't. It was never really talked about. I mean, we didn't like say, okay, well, you're going to get Friend Road and you're going to get Heritage Road and you're going to get this and you're going to get that. That didn't happen. Not around me.

{¶ 28} After a thorough review of the record, it is clear the probate court found Danny

and Bryan's claim that a global agreement had been reached between the parties as to how the estate should be distributed lacked credibility. The probate court specifically stated as such as part of its findings of fact wherein it noted that its decision was reached after "taking into consideration the credibility of each witness." As the trier of fact, the probate court observes the witnesses and their demeanor, gestures, and voice inflections, making it the best judge of credibility. *In re Estate of Burton*, 12th Dist. Warren No. CA2015-12-110, 2016-Ohio-2683, ¶ 8, citing *In re Estate of Kendall*, 171 Ohio App.3d 109, 2007-Ohio-1672, ¶ 23 (2d Dist.). "[A] finding of an error in law is a legitimate ground for reversal, but a difference of opinion on credibility of witnesses and evidence is not." *Seasons Coal Co. v. City of Cleveland*, 10 Ohio St.3d 77, 81 (1984). Therefore, while there may be some circumstantial evidence indicating a global agreement had been reached, we will not reverse the probate court's decision holding the opposite to be true.

{¶ 29} In so holding, we note that even if the probate had found that a global agreement had been reached, as previously determined by the Ohio Supreme Court in *Zuendel v. Zuendel*, 63 Ohio St.3d 733, 737 (1992):

> a probate court does not have jurisdiction to render a declaratory judgment as to the validity or enforceability of a contract providing for a division of the testator's estate different from that provided in the will. Such contracts are not directly related to the administration of the testator's estate.

Therefore, at least as it relates to a statutory concealment action brought pursuant to R.C. 2109.50, any attempts by Danny and Bryan to circumvent their mother's wishes as expressed by her last will and testament through an alleged "global" agreement between the parties would be for naught. Danny's argument to the contrary lacks merit.

**The Exclusion of Expert Witness Testimony and Evidence**

{¶ 30} Jennifer argues the probate court erred by prohibiting her expert from

testifying at trial and by striking from the record her expert's appraisal of Pools & More. According to Jennifer, her expert's appraisal of the business should not have been stricken from the record since it was more accurate than the appraisal provided by Berry, thus rendering all of the probate court's subsequent decisions regarding Pools & More "in error simply because of a faulty starting point." However, as the record reveals, and just as the probate court found, Jennifer attempted to introduce this so-called "new" evidence after the first day of trial had already concluded. Again, as the probate court stated when issuing its decision to exclude this evidence at trial:

> [Y]ou can't just – when I start a trial and I have to continue it in progress because of a time limitation, that freezes everything. You don't get to go out there and shore up the rest of your evidence and pick up additional facts and additional witnesses, especially one as serious as an expert that was just thrown at them at the last minute.

{¶ 31} We agree with the probate court's decision to exclude this evidence at trial, and further deny Jennifer's request for this court to remand this matter for further proceedings so that the probate court can "get the 'right' answer" regarding the true value of Pools & More at the time of Lenna's death. Nothing about her expert's opinion regarding the value of Pools & More can be considered "newly discovered" evidence as Jennifer now suggests. In so holding, we specifically reject Jennifer's claim that Berry, a certified appraiser employed by Sibcy Cline Realtors, was somehow not qualified to appraise the business. This is particularly true here considering Jennifer never objected to Berry's appointment as the appraiser of her mother's estate.

{¶ 32} Our holding is further supported by the fact that, in accordance with R.C. 2115.16, Jennifer could have filed exceptions to the inventory as appraised by Berry that Danny submitted to the probate court for approval. Jennifer never filed any such exceptions. As a result, pursuant to R.C. 2115.17, that appraisal was rendered conclusive

- 16 -

for all purposes impacting this appeal. Therefore, while Jennifer may now disagree with Berry's appraisal of Pools & More, based on the record properly before this court, we find no error in the trial court's decision. Jennifer's argument is without merit.

**Pools & More**

{¶ 33} Danny and Jennifer raise a number of issues regarding the probate court's decisions involving the ownership interests, value, and distribution of Pools & More. In this court's attempt at brevity, these issues will be addressed together when possible.

The Value of Pools & More

{¶ 34} Both Danny and Jennifer challenge the probate court's decision finding the value of Pools & More to be $223,300. On the one hand, Danny argues the trial court erred by finding the inventory and equipment owned by Pools & More at the time of his mother's death valued at $223,300 were estate assets "rather than the shares of stock in Pools & More that Lenna owned at the time of her death." Thus, according to Danny, because Berry appraised Pools & More as having no value as a business entity exclusive of its inventory and equipment, neither he nor Bryan could be found guilty of concealing those assets from their mother's estate.

{¶ 35} On the other hand, attacking the probate court's decision on a more fundamental level, Jennifer argues the probate court erred by adopting Berry's appraisal finding Pools & More had no value as a business entity exclusive of its inventory and equipment. In support of this claim, Jennifer argues the probate court's decision was improper since Berry, to no fault of her own, failed to include in her appraisal any monies that were in Pools & More's operating account at the time of Lenna's death, monies that

- 17 -

Danny conceded at trial amounted to approximately $20,000.[7]   Jennifer also argues the probate court's decision adopting Berry's appraisal was in error since Danny and Bryan continued to operate the business in the years following their mother's death, which resulted in the business generating nearly $1,500,000 in revenue.

{¶ 36} As it relates to Danny's claims that the estate interest in Pools & More was limited to the shares of stock his mother owned at the time of her death, we find such claim lacks merit.  Just as the trial court found, based on the language contained in Lenna and Grady's divorce decree, "[e]verything about that business is part of this estate," such as its inventory and equipment, most of which had since been sold, "and we're going to hear about it."  We agree.  In so holding, while there was some reference to Pools & More' shares of stock, we note that the record is devoid of any evidence indicating Pools & More ever issued any shares to either of its two original owners, Lenna and Grady.  Our holding is further supported by the fact that when confronted with this very issue, the probate court found such claim lacked credibility, stating "[t]his business has shares of stock?  I find that hard to believe when that agreement was written on a napkin, it looks like."  We find no error in the probate court's decision.

{¶ 37} Moving now to Jennifer's claims, since Danny conceded the issue at trial, we agree the probate court erred by not including an additional $20,000 to Berry's appraised value of Pools & More given the fact there is no dispute that money was in Pools & More's operating account at the time of Lenna's death.  That money is therefore an estate asset subject to distribution.  However, as it relates to the nearly $1,500,000 in revenue Pools & More generated in the years following their mother's death, just as the probate court found,

7. Although the record is not definitive, it appears that neither Danny nor Bryan ever informed (or provided any documentation to) Berry indicating Pools & More had any monies in its operating account at the time of Lenna's death.

while there is no question that Pools & More generated some business, "after all the expenses were paid," including limited employee salaries to Danny and Bryan, "the net effect was the business had no value – which is precisely what Gail Berry said right after Lenna passed away." We find no error in the probate court's decision.

**{¶ 38}** In so holding, we note that the probate court also stated:

> Based on the evidence presented, the Plaintiff failed to prove to the Court that the continued operation of the pool business(es) yielded money that would be an Estate asset. Clearly, money came in and money went out. Expenses were paid and salaries were taken. However, upon close examination of the accountings that were provided for Pools and More and its successor company (which were voluminous), the Court finds that the income stream and outlay of expenditures were merely a wash and valueless to the Estate.

**{¶ 39}** Just as the probate court before us, this court has also conducted a thorough review of the record. Our review, however, has not uncovered any error in the probate court's decision aside from its failure to include an additional $20,000 to Berry's appraisal of Pools & More. As Bryan stated, and as the record fully supports, "[t]hat business was sinking faster than the Titanic." In reaching this decision, we disagree with Jennifer's claim that Danny and Bryan had depleted any profits Pools & More made by providing themselves with excessive yearly salaries. As the record indicates, even when applying Jennifer's own calculations that Danny and Bryan paid themselves salaries totaling $211,913.68, when extrapolated over the seven-year period for which the business continued to operate, this amounts to just over $15,000 a year. As noted by the probate court, and for which we certainly agree, this is "hardly an exorbitant amount." Therefore, aside from its failure to include an additional $20,000 to Berry's appraisal of Pools & More, we find no error in the probate court's decision.

Bryan's 16% Ownership Interest in Pools & More

- 19 -

{¶ 40} Jennifer argues the trial court erred by finding Bryan owned a 16% interest in Pools & More at the time of their mother's death. According to Jennifer, although Bryan and Grady both testified that Bryan had purchased a 16% interest in the business before Lenna's passing, "Grady and Bryan lied." However, while Jennifer may disagree, the probate court clearly found the testimony offered by Bryan and Grady regarding Bryan's alleged 16% ownership in Pools & More to be credible. Again, as the probate court explicitly stated:

> The Court would have expected to receive something a little more formal than what was presented by Bryan as evidence of his deal to purchase part of the pool business from Grady and Lenna. However, the Court is convinced that the purchase was underway and by the time Lenna passed away, Bryan had paid enough money to become a 16% shareholder in Pools and More.

{¶ 41} As noted above, "a finding of an error in law is a legitimate ground for reversal, but a difference of opinion on credibility of witnesses and evidence is not." *Seasons Coal Co.*, 10 Ohio St.3d at 81. Therefore, because Bryan's ownership interest in Pools & More revolved around an issue of witness credibility, we will not reverse the probate court's decision. Jennifer's argument to the contrary is therefore without merit.

**Friend Road Property**

{¶ 42} Just as with the issues involving Pools & More, Danny and Jennifer also raise a number of issues regarding the probate court's decisions involving the Friend Road property. Again, in this court's attempt at brevity, these issues will be addressed together when possible.

Rents Received from the Friend Road Property

{¶ 43} Jennifer argues the probate court erred by finding the rents Danny and Bryan received from the Friend Road property following their mother's death could not be

recovered by the estate through her concealment action. The parties do not dispute that Danny and Bryan received $7,400 in rental payments from their mother's share of the Friend Road property after their mother's passing. What the parties do dispute, however, is whether the probate court should have ordered those rents be recouped from Danny and Bryan so that they could be included in the estate subject to equal distribution between the parties as part of Jennifer's statutory concealment action.

{¶ 44} Although the probate court originally determined that Danny and Bryan could be found guilty under R.C. 2109.50 of concealing the rents they received from the Friend Road property, the probate court later revisited that decision and found the rents were not estate assets, and therefore, "Danny and Bryan cannot be found guilty of concealing them." As noted above, the probate court based its decision on the fact that "title to real estate passes by operation of law at the moment of decedent's death." As a result, the probate court determined that the rents received from the Friend Road property "belongs to the heirs and not to the Estate."

{¶ 45} We agree with the probate court's decision finding Danny and Bryan could not be found guilty of concealing the rents they received from the Friend Road property in a statutory concealment action. This is because, just as the trial court found, the rents received from the Friend Road property were neither monies nor assets of their mother's estate. Our holding, however, should not be read to preclude either Jennifer or Gwendolyn from pursuing another civil remedy in an effort to recoup their share of the rents from Danny and Bryan individually. Therefore, while we believe Danny and Bryan acted improperly by not giving Jennifer and Gwendolyn their fair share of the rents from the Friend Road property, the probate court correctly determined that Danny and Bryan could not be found guilty of concealing those rents in a statutory concealment action. Jennifer's argument to

the contrary is without merit.

### Sale Price of the Friend Road Property

{¶ 46} Jennifer next argues the probate court erred by finding Bryan had not concealed $25,000 from the estate resulting from the sale of the Friend Road property for $100,000 when Berry had previously appraised the property at $75,000 at the time of Lenna's death. In support of this claim, Jennifer argues that it was improper for the probate court not to include this $25,000 "profit" as an estate asset. However, as noted above, title to the Friend Road property passed by operation of law at the time of Lenna's death. As a result, any alleged "profit" from the sale of the Friend Road property cannot be considered an estate asset. Just as the probate court found, "it is simply Bryan's good fortune that he sold that property for more than what it was worth at the time of Lenna's death." Finding no error in the probate court's decision, Jennifer's argument is without merit.

### Damages

{¶ 47} In light of the forgoing, and after considering all of Danny and Jennifer's arguments raised herein, we affirm as modified the probate court's decision, thereby finding Danny and Bryan guilty of concealing estate assets from Pools & More totaling $243,300, Danny being responsible for 50% of that sum with Bryan being responsible for the remaining 34% (after subtracting his 16% ownership interest in the business). Anticipating the estate would get a decision rendered in its favor, Jennifer, as the administrator of the estate, has provided this court with several methods on how she believes this court should calculate damages. However, many of her suggestions are based on faulty logic and/or directly contradictory to our holdings above. Therefore, Jennifer's arguments regarding the proper method to calculate damages are overruled.

{¶ 48} Danny has also provided this court with his suggestion on how damages

should be awarded. Specifically, relying on R.C. 2109.52, Danny argues the trial court erred by awarding a money judgment rather than ordering restoration in kind through the return of any remaining assets belonging to Pools & More. However, as provided in R.C. 2109.52, if a person is found guilty of concealing or embezzling estate assets under R.C. 2109.50, such as Danny and Bryan here:

> the probate court *shall* assess the amount of damages to be recovered or the court *may* order the return of the specific thing concealed or embezzled or *may* order restoration in kind.

(Emphasis added.)

{¶ 49} As the plain language of that statute reveals, and while Danny understandably prefers an order of restoration in kind, that is only one of the options available to the probate court when assessing the amount of damages to be recovered in a statutory concealment action. That is because, as noted by the Ohio Supreme Court, "[i]n statutory construction, the word 'may' shall be construed as permissive and the word 'shall' shall be construed as mandatory unless there appears a clear and unequivocal legislative intent that they receive a construction other than their ordinary usage." *Dorrian v. Scioto Conservancy Dist*, 27 Ohio St.2d 102 (1971), paragraph one of the syllabus. We therefore find no error in the probate court's decision to award a money judgment rather than ordering restoration in kind. That is particularly true here when considering, contrary to Danny's claim otherwise, much of Pools & More's inventory and equipment had since been sold. Danny's argument otherwise lacks merit.

## Conclusion

{¶ 50} Modifying the probate court's decision to conform to this court's holding, we find: (1) Danny guilty of concealing and/or embezzling estate assets belonging to Pools & More in the amount of $121,650; and, (2) Bryan guilty of concealing and/or embezzling

estate assets belong to Pools & More in the amount of $82,722, both figures that are subject to a ten percent penalty plus costs pursuant to R.C. 2109.52. Therefore, when aggregating these dollar amounts with the ten percent penalty as provided by in R.C. 2109.52, the estate is hereby awarded money judgments against (1) Danny in the amount of $133,815 ($121,650 + $12,165) plus costs; and, (2) Bryan in the amount of $90,994.20 ($82,722 + $8,272.20) plus costs. Neither party will be completely satisfied with this court's decision. Nevertheless, to the extent not otherwise stated, Danny and Jennifer's five assignments of error are overruled and the probate court's decision is affirmed as modified. We find such decision equitable and necessary to reach finality in this case as the administration of the estate is now stretching into its ninth year.

{¶ 51} Judgment affirmed as modified.

HENDRICKSON, P.J., and RINGLAND, J., concur.