[Cite as *Buckner v. Hasan*, 2026-Ohio-2314.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

CHARLES BUCKNER JUNIOR,     :

    Plaintiff-Appellee,     :

    v.     :

CAROLYN HASAN, ET. AL,     :

    Defendant-Appellant.     :

Nos. 115132 and 115170

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** June 18, 2026

Civil Appeal from the Cuyahoga County Court of Common Pleas
Probate Division
Case No. 2024ADV291482 and 2024ADV293661

*Appearances:*

Dibo Law, LLC, Nathalie A. Dibo, and Scott Schooler, *for appellee.*

Carolyn Hasan El, *pro se.*

DEENA R. CALABRESE, J.:

{¶ 1} In these consolidated appeals, defendant-appellant Carolyn Hasan ("Hasan") appeals the trial court's judgments authorizing the sale of certain real estate pursuant to R.C. 2127.04(B) over her objection, finding her guilty of conveying away and possessing money belonging to the estate of Charles W.

Buckner Sr. (the "decedent") pursuant to R.C. 2109.50 and 2109.52, and awarding attorney fees in connection with the finding of guilt in that proceeding. Finding no merit to the appeal, we affirm.

## I. Facts and Procedural History

### A. Background — The Decedent's Estate

{¶ 2} The decedent died intestate on September 15, 2022. On January 6, 2023, one of his children, Charles Buckner Jr. ("Buckner"), filed Cuyahoga Probate No. 2023EST276692 to open an estate and serve as administrator.[1] The filing identified five individuals, including Hasan, as the decedent's children. It also identified one grandchild as next of kin.

{¶ 3} Following a hearing on April 7, 2023, a probate court magistrate issued a decision on the application for authority to administer the estate. In an entry dated April 13, 2023, the magistrate noted Buckner Sr.'s date of death, that he did not leave a will, and that his next of kin included five children and one grandchild. The magistrate further noted that while Hasan appeared at the hearing and objected to Buckner's application to serve as administrator, she refused to provide any sworn testimony. According to the magistrate, Hasan likewise failed to produce evidence of what assets she claimed to be currently administering or under what authority

---

[1] This short background discussion is based on the docket in the estate action. "This court is permitted to take judicial notice of court filings that are readily accessible from the internet." *State ex rel. JTC Solutions, LLC v. Kelley*, 2026-Ohio-1288, ¶ 1, fn. 1 (8th Dist.); *Hrina v. KLS Martin, L.P.*, 2026-Ohio-1276, ¶ 4, fn. 1 (8th Dist.); *State v. Wagner*, 2023-Ohio-1215, ¶ 64 (8th Dist.); *State ex rel. Everhart v. McIntosh*, 2007-Ohio-4798.

she was doing so. In addition, Hasan had filed no separate application for authority to administer the estate.

{¶ 4} The magistrate found that all parties other than Hasan had consented to Buckner's appointment as administrator, that nothing indicated he was unsuited for the role, and that no other individual (including Hasan) had separately sought authority to administer the estate. The magistrate therefore recommended that Buckner's application be granted subject to posting a bond.

{¶ 5} Hasan objected to the magistrate's decision but failed to file either a transcript or an affidavit as required by Civ.R. 53(D)(3)(b)(iii). On August 9, 2023, the probate court summarily overruled the objections and, upon independent review, adopted the magistrate's decision.

{¶ 6} Buckner posted the required bond on August 15, 2023, and the probate court appointed him as the fiduciary of the estate the same day.

{¶ 7} Hasan followed up with a flurry of filings. For example, she attacked the probate court's authority by filing separate "Affidavits of Fact" with both the assigned judge and the probate division's administrative judge. These filings consisted primarily of universally discredited sovereign-citizen arguments.[2]

---

[2] "Ohio courts have rejected arguments that the courts lack subject-matter and personal jurisdiction over natural or sovereign persons." *Capital One Bank (U.S.A.), N.A. v. McCladdie*, 2022-Ohio-4082, ¶ 15 (8th Dist.). "Regardless of an individual's claimed status of descent, be it as a 'sovereign citizen,' a 'secured-party creditor,' or a 'flesh-and-blood human being,' that person is not beyond the jurisdiction of the courts. These theories should be rejected summarily, however they are presented." *United States v. Benabe*, 654 F.3d 753, 767 (7th Cir. 2011).

{¶ 8} Hasan also filed a motion to have Buckner removed as administrator. By entry dated January 25, 2024, the probate court entered a judgment finding that Hasan had "set[] forth no statutory or factual basis for removal of the Administrator" and that her petition to remove him "sets forth no recognizable cause of action." After further procedural maneuvering, Hasan appealed. Her brief in that case, 8th Dist. Cuyahoga No. 114074, repeated many of the same sovereign-citizen arguments, including that the trial court erred by ignoring her statement that she was "a woman of flesh and blood," disregarding "the fact that [decedent] was a man of flesh and blood and not a person/corporate entity[,]" and providing her with "no verifiable proof of having personam, subject matter or territorial jurisdiction over Carolyn Hasan El as a woman of flesh and blood capacity and flesh and blood capacity only[.]" She further referred to the elected trial court judge and the trial court magistrate by their proper names followed by "dba Judge" and "dba Magistrate," respectively.

{¶ 9} In an entry dated December 11, 2024, this court granted Buckner's motion to dismiss the appeal. It found that Hasan's "brief in support of the appeal contains 11 proposed assignments of error that simply constitute a list of unrelated legal concepts and legal theories unsupported with coherent explanation of how the legal concepts apply to the trial court's judgment."

## B. Action for Authority to Sell Real Estate

{¶ 10} On August 23, 2024, Buckner filed a fiduciary's complaint for authority to sell real estate. Hasan responded on October 18, 2024, with an answer

in black, blue, and red ink that again relied principally on sovereign citizen theories. While there was some confusion regarding whether Hasan was attempting to assert a counterclaim, that issue was laid to rest by two journal entries dated November 19, 2024, one dismissing any purported counterclaim in Hasan's October 18, 2024 answer and another dismissing Hasan's separate counterclaim filed November 15, 2024. Hasan has not separately assigned error to the dismissals of her counterclaims.

{¶ 11} A probate court magistrate held a hearing on December 17, 2024, on the complaint for authority to sell real estate. Buckner was present and represented by counsel. Hasan appeared pro se. The hearing was recorded.

{¶ 12} According to the magistrate's decision filed February 25, 2025, all other next of kin filed waivers of summons as well as consents to the complaint for land sale. The magistrate issued findings of fact, indicating that the decedent's probate assets included "two parcels of real estate, to wit, 13010 Soika Avenue, Cleveland, Ohio 44120 (129-29-060) and 1820 Knowles Street, East Cleveland, Ohio 44112 (672-22-050)," and that the fiduciary sought to sell both properties "to pay the debts of the estate."

{¶ 13} In addition to reiterating that all other next of kin had consented to the sale of the referenced parcels, the magistrate noted that Hasan objected to the sale of the Soika Avenue property because, according to Hasan, the decedent had not wanted it sold and also because she believed she was "entitled to the real property for care services she provided to the decedent prior to his passing."

According to the magistrate, Hasan was "indifferent" to the disposition of the Knowles Street property except for her preference that it be kept "to build a family legacy."

{¶ 14} The magistrate's conclusions of law quoted R.C. 2127.04(B) and (B)(1)(a)-(c) in their entirety. That section permits an administrator to commence a probate court action "to sell any part or all of the decedent's real property, even though the real property is not required to be sold to pay debts or legacies" where at least 50 percent of all persons interested in the real property have consented to the sale, no person with an aggregate interest in the real property of greater than 25 percent has objected to the sale, and the sale is in the best interest of the estate. The magistrate found all of these conditions satisfied and ordered that the properties could be sold without further appraisal.

{¶ 15} The magistrate's decision expressly included the following notification with respect to filing objections:

> Pursuant to Civil Rule 53(D)(3)(b)(iv), a party shall not assign as error on appeal a Court's adoption of any factual finding or legal conclusion of a magistrate, whether or not specifically designated as a finding of fact or conclusion of law under Civ. R.53(D)(3)(a)(ii), unless that party has objected to that finding or conclusion as required by Civ.R. 53(D)(3)(b).

{¶ 16} Hasan filed timely objections to the magistrate's decision on March 11, 2025, but failed to provide a transcript or submit an affidavit pursuant to Civ.R. 53(D)(3)(b)(iii) either with her objections or within 30 days after filing her objections. In addition to contesting some of the magistrate's findings of fact, Hasan contended that the magistrate made a legal error, namely, that the magistrate

incorrectly interpreted R.C. 2127.04. The magistrate had focused on R.C. 2127.04(B), which permits a fiduciary to commence an action for the sale of real property without the unanimous consent of interested parties. Hasan, however, quoted portions of R.C. 2127.04(A), a separate subsection contemplating an action for authority to sell real property "[w]ith the consent of all persons entitled to share in an estate upon distribution[.]" Hasan's statutory-construction argument consisted of the observation that "A comes before B." Hasan reasoned that because she did not consent to the sale of the property, the court lacked authority to permit the sale.

{¶ 17} Buckner filed his opposition on March 21, 2025, principally challenging Hasan's interpretation of the statute. By order dated April 15, 2025 — more than 30 days after Hasan had filed her objections — the trial court overruled her objections and adopted the magistrate's decision.

{¶ 18} Hasan filed a timely notice of appeal on May 14, 2025.[3] On June 11, 2025, she filed an application to prepare transcript, which the trial court granted by order dated June 13, 2025. Several days later, however, Hasan filed both an affidavit of indigence and a motion to prepare the transcript at State's expense, citing financial hardship. We note that at this point Hasan began filing identical pleadings in both this action (2024ADV291482) and a concealment action (2024ADV293661),

---

[3] The same day, Hasan also filed a Civ.R. 60(B) motion for relief from judgment with the trial court. Buckner moved to strike the motion. The trial court granted Buckner's motion to strike on May 30, 2025, concluding that Hasan's Civ.R. 60(B) motion "must be stricken because an Appeal has been filed and is pending in the Eighth District Court of Appeals."

which we discuss below. In the consolidated appeals, Hasan later sought and was granted multiple extensions to prepare the record.[4]

{¶ 19} The trial court denied Hasan's motion to prepare the transcript at State's expense on June 26, 2025, stating that "there is no statutory authority for providing a trial transcript at state expense for a civil action." On August 14, 2025, Hasan filed a proposed App.R. 9(C) narrative of the hearing before the magistrate. The trial court rejected the narrative as well. In an order dated August 25, 2025, it reasoned that there was "no assertion that a recording was not made or that a recording or transcript is unavailable."[5] It then continued:

> The Court finds that Rule 9(C) is not applicable absent a finding that a recording or transcript is not available. The Court further finds that the proposed narrative attached to Defendant's Notice raises an issue as to whether Defendant made her own recording of the proceedings in violation of this Court's Local Rule 54.

### C. Concealment Action

{¶ 20} On November 19, 2024, while the complaint for authority to sell real estate was still unresolved, Buckner filed a complaint against Hasan pursuant to

---

[4] We will address the chronology and content of Hasan's various record-related motions filed with this court in connection with her fifth assignment of error.

[5] The trial court issued nearly identical orders in this action (2024ADV291482) and the concealment action (2024ADV293661). Each order, however, appears on the incorrect docket. The order docketed in the concealment action, which did not involve proceedings before a magistrate, refers to "a hearing held before a Magistrate." The order in this case, 2024ADV291482, featured no hearings by the trial court but nevertheless references Hasan's proposed App.R. 9(C) narrative "of a hearing before the undersigned judge." Both orders deny Hasan's motions for identical reasons, however, and both are part of the record in this consolidated appeal. Accordingly, there is no impediment to consideration of Hasan's associated assignment of error. The erroneous captioning and misfiling did not prejudice Hasan and was therefore harmless.

R.C. 2109.50 and 2109.52 for concealment of assets. Buckner contended that after the decedent's death Hasan had liquidated certain deposit and retirement accounts that became estate property upon the decedent's death, first by withdrawing $20,000 from an account shortly after the decedent's death and then by conveying away additional money several months later into a trust account that she controlled.

{¶ 21} After service of the complaint, Hasan filed a motion to dismiss on January 9, 2025. Buckner opposed the motion. Noting that Hasan claimed to have withdrawn the funds pursuant to a "private Express Trust [sic]," Buckner wrote:

> Even in the unlikely event that Defendant is able to establish and provide sufficient evidence to support this claim, the transfers were still unauthorized because Charles Buckner Sr. would have had to transfer these funds to the trust during his lifetime in order for the money to be considered trust property. Defendant's self-proclaimed position as trustee does not grant her authority to convert estate property to trust property.

{¶ 22} The trial court denied Hasan's motion to dismiss by entry dated February 5, 2025.

### 1. The Concealment Hearing

{¶ 23} The trial court held a hearing on the complaint for concealment on March 10, 2025. The hearing was ultimately transcribed, and the transcript was made part of the record on appeal.

{¶ 24} Because it is relevant to Hasan's fifth assignment of error, we note an exchange between the trial court and Hasan immediately after the court went on the record. When the trial court asked Hasan if she was proceeding without counsel, she responded: "I have assistant [sic] of counsel, not a bar member." (Tr. 3.) The

trial court requested clarification. Hasan responded: "I'm presenting [sic] myself and have assistance of counsel." (Tr. 3.) The trial court asked an unidentified male if he was an attorney. He responded in the negative. The trial court then informed Hasan that "[h]e can sit with you for moral support or whatever, but he cannot participate or represent you if he's not a licensed attorney in the State of Ohio." (Tr. 4.) Hasan sought to clarify that she planned to ask the individual to help her with paperwork. The trial court replied: "Well, we'll see how that goes, because we have very strict rules in Ohio about the practice of law." (Tr. 4.) It stated that if it appeared the individual was trying to counsel Hasan, the trial court would "stop it." (Tr. 4.) The trial court nevertheless noted that it would "see how it proceeds." (Tr. 4.)

{¶ 25} The parties made brief opening remarks. Buckner then called Hasan to testify. There was a stumbling block before Hasan answered even the first question, which was a request to state and spell her name for the record. While the transcript reflects that Hasan responded "[m]y — my —," the trial court's immediate admonition sheds light on what occurred. Specifically, Hasan had attempted to confer with a nonattorney at the outset of her direct examination:

> THE COURT: I'm not going to have you confer with a nonattorney. This isn't going to happen. He can sit in the back, or he can leave the room if that's what's going to happen. He cannot advise you. Sir, you cannot advise her. You're not an attorney.

(Tr. 8.)

{¶ 26} Hasan provided her name. She further testified that her father had died on September 15, 2022. Buckner next asked whether Hasan was currently

employed.  Hasan refused to answer, claiming she did not think it was relevant.  The trial court reminded Hasan that it was for the court to decide matters of relevance and overruled Hasan's objection.  Hasan responded that she "work[ed] for herself." (Tr. 9.)  The court stated:

> THE COURT: You know what?  This [is] going to go a lot easier if you just answer the questions.  We're not — we don't play games.  This is a court proceeding.
>
> THE WITNESS: Okay.  No, no.
>
> THE COURT: I understand how that law works, and I'm going to make sure that we follow the law.
>
> THE WITNESS: And —
>
> THE COURT: So the question is, are you employed?
>
> THE WITNESS: Okay.  I plead the Fifth on that.

(Tr. 9-10.)

{¶ 27} The trial court directed Buckner to move on with questioning.  Hasan testified that she held power of attorney for the decedent.  Buckner presented her with Exhibit A, and Hasan confirmed it was the power of attorney bearing both her signature and her late father's.

{¶ 28} Buckner next identified Exhibit B as a UBS Resource Management account statement dated June 2023, account number xxxx517, in the name of the Buckner Family Trust.  (Tr. 12.)[6]  At this point, however, proceedings stalled again

---

[6] The transcript specifies Exhibit D, but this appears to be a minor transcription error.  The relevant testimony clearly focused on Exhibit B, the June 2023 UBS statement.

for another admonition by the trial court regarding Hasan's apparent attempt to consult, during her testimony, with nonattorneys:

> THE COURT: Again, I'm going to ask both you gentlemen to let Ms. Hasan represent herself. There is a law in Ohio that prohibits you from acting as counsel. And I will have to report both of you if you continue to attempt to advise her.
>
> UNIDENTIFIED SPEAKER: We —
>
> THE COURT: She — I don't want to hear anything from you. You are free to sit with her if she wants you to sit at the table. But you will not advise her, you will not assist her. You are not attorneys.

(Tr. 12.)

{¶ 29} Hasan confirmed that she held herself out to be the trustee of the Buckner Family Trust. (Tr. 13.) Asked to explain under what authority she was trustee, Hasan responded, "[U]nder the authority of my father, charging me to take care of his affairs." (Tr. 13-14.)

{¶ 30} Buckner presented Hasan with Exhibit C, identified as the "Buckner Family Trust, trust indenture and articles." (Tr. 14.) The exhibit bears four signatures, specifically, a signature that purports to be her father's as settlor, her own signature as trustee, and two witness signatures. Hasan was unable to provide the full names of the witnesses and responded "[t]hat's not relevant" when asked how she knew them. (Tr. 15.) Once admonished again by the court, Hasan stated she knew the witnesses "[i]n a business capacity." (Tr. 15.)

{¶ 31} Hasan confirmed that according to the page numbering on Exhibit C, the trust document consisted of a total of twelve pages, but the exhibit consisted of just four pages. The following exchange occurred:

Q: And we've requested a copy of the full trust. But this is all you've given us, correct?

A: Absolutely.

(Tr. 16.)

{¶ 32} Hasan admitted that her father's signature on Exhibit C was actually her own handwriting: "[T]hat is my signature, signing for my father[.]" (Tr. 16.) She further admitted, however, that there is no indication that she was signing under her power of attorney authority. She chalked this up to a "mishap" or "honest mistake" because she "was so used to signing his name[.]" (Tr. 16.) Having admitted that the signature was actually hers, she further claimed to have created the purported trust under her power of attorney authority. (Tr. 17-18.)

{¶ 33} Buckner next questioned Hasan regarding Exhibit D, identified as a document dated May 25, 2023, opening a Buckner Family Trust account with UBS. Hasan admitted that the document bore her signature and that she hand wrote her father's social security number on it. (Tr. 18-19.) Hasan nevertheless claimed the account was created back in August 2022, prior to her father's death, and that the May 2023 document merely reflected "when UBS eventually did this." (Tr. 19-20.)

{¶ 34} After a short recess, the hearing resumed. Hasan was referred again to Exhibit B, the Buckner Family Trust UBS account statement dated June 2023. Hasan confirmed that page nine of the statement reflects a "securities transferred in" total of $31,065.33. She further confirmed that according to the statement, the transfers came from two separate UBS accounts, xxxx711 and xxxx716, with the transfers themselves dated June 7 and June 8, 2023. (Tr. 21-22.) Asked if those

accounts were in her father's personal name, Hasan replied: "I'm taking a [sic] Fifth." (Tr. 22.)

{¶ 35} Buckner then turned to the actual documents for the referenced accounts. Exhibit E was a September 2022 statement for account xxxx711. The statement reflects a value on August 31, 2022 of $42,935.12. Page 10 of the exhibit indicates a withdrawal on September 29, 2022 — after the death of Buckner Sr. — in the amount of $20,000. Asked if she made the withdrawal, Hasan responded: "I plead the Fifth." (Tr. 23.) She also "plead[ed] the Fifth" in response to the question of whether the withdrawal made September 29, 2022, was after her father's death. (Tr. 23-24.)

{¶ 36} Hasan was then confronted with Exhibit F, a UBS check made out to decedent in the amount of $20,000 dated September 29, 2022, after the decedent's death. Asked if it was her signature on the endorsement, Hasan replied: "I take the Fifth. I refuse to answer that." (Tr. 24.) This time, however, Hasan did admit that September 29, 2022, was after her father's death on September 15, 2022. (Tr. 25.)

{¶ 37} Asked what she did with the $20,000, Hasan did not assert her Fifth Amendment rights. Instead she claimed "there was a disbursement of $3,333.33 . . . to all [children] of [decedent]." (Tr. 25.) Asked if there was evidence of this disbursement, Hasan argued that counsel should ask the next of kin "because they know they did[]" receive the money. (Tr. 25.)

{¶ 38} Buckner then moved on to Exhibit G, a funeral home receipt indicating a payment by check in the amount of $16,000 on October 2, 2022, shortly

after the date of the UBS check. Hasan, however, denied using any portion of the $20,000 withdrawal to issue a check to the funeral home. (Tr. 27-28.)[7]

{¶ 39} Buckner next questioned Hasan regarding Exhibit H, a June 2023 UBS statement, account xxxx711, in the decedent's name. Hasan confirmed that at the bottom of page 9 the statement reflects securities transferred out in the amount of $18,329.77. (Tr. 28-29.) She further acknowledged that the transfers were made on June 7 and June 8, 2023, to the Buckner Family Trust account, UBS account number xxxx517. (Tr. 29.) This, along with another transfer to the trust account on June 7, 2023, in the amount of $1,009.40, left account xxxx711 with a June 30, 2023 ending balance of zero.

{¶ 40} Asked for an explanation for the transfers made on June 7 and June 8, 2023, approximately nine months after her father's death, Hasan stated that "[i]t appears that UBS decided to transfer those funds at this time." (Tr. 30.) She claimed she had directed UBS to make the transfers "prior to" the referenced dates, in fact "way before" those dates. (Tr. 30.) Buckner asked Hasan why UBS would wait nine months to make the transfers. She responded: "That was precisely my question, too. And that's why eventually [sic] got transferred. It eventually got transferred because I had to stay on them." (Tr. 30.)

---

[7] At this point the trial court admonished Hasan for communicating with one or more other individuals at the table prior to answering a question during her examination. The trial court again warned that if there was "any further communication" it would require the gentlemen sitting at the table "to move to the seats in the back." (Tr. 26-27.)

{¶ 41} At this point Buckner pointed out that Hasan had signed Exhibit D, the paperwork opening the UBS trust account on May 25, 2023. (Tr. 31.) Hasan insisted that everything was in place earlier and that documentation showing that she requested the transfers prior to her father's death "would be with UBS." (Tr. 31.) She had nothing in writing, she testified, but she believed that UBS recorded all telephone calls, which "would be [her] only proof[,]" and she "would hope that nothing got deleted[.]" (Tr. 31.)

{¶ 42} Faced with these dates demonstrating the date the UBS account in the name of the trust was opened and the date of the transfers, Hasan testified:

> Again, I will say, my dad — my dad, Charles William Buckner, Sr., entrusted me to do his will, what he wanted me — what he needed me to do. There was nothing about concealing or trying to hide anything. Never try to hide anything.

(Tr. 31.) She claimed that despite what "may be the appearance[,]" that "does not take away the fact that [she] had started" or "requested this prior to [her] father's demise, because [she] did." (Tr. 32.)

{¶ 43} Buckner moved to Exhibit I, a September 2022 UBS IRA rollover account in Buckner Sr.'s name bearing account number xxxx716, as well as Exhibit J, the June 2023 statement for the same UBS IRA account. The statement indicates a total of securities transferred out of $12,735.56. Asked to confirm that Exhibit J reflected the transfer of this amount, Hasan responded: "I would take the Fifth on that." (Tr. 33.) The exchange continued in similar fashion with respect to the dates of the transfers:

Q. Okay. Do you see above that the June 8th transfers, that total of that 12,000 number?

A. Take the Fifth on that as well.

Q. So just like the last account, you transferred this money to the trust account nine months after your father passed away, correct?

A. Take the Fifth.

(Tr. 33-34.)[8]

{¶ 44} Asked whether she knew that the UBS IRA rollover account had named beneficiaries at the time of her father's death, Hasan indicated she did not. Exhibit K, however, was a McDonald Investments IRA director adoption agreement specifying several beneficiaries, including Hasan. Exhibit L was an affidavit from a UBS financial advisor that linked the accounts, indicating that the former McDonald Investments account became Buckner Sr.'s UBS IRA rollover account, now bearing UBS account number xxxx716. The affidavit further indicated that the separate UBS account bearing account number xxxx711 did not have any beneficiaries.

{¶ 45} With respect to the UBS IRA rollover account, which had beneficiaries specified in the event of Buckner Sr.'s death, the following exchange occurred:

Q. Okay. So you didn't alert UBS of your father's passing, did you?

A. I refuse to answer that. Take my [sic] Fifth. Fifth.

(Tr. 37.)

---

[8] The trial court indicated that because a concealment action is a quasi-criminal proceeding, it would allow Hasan to assert the Fifth Amendment, but also stated that "[t]he documents speak for themselves[.]" (Tr. 34.)

{¶ 46} Pressed as to whether the June 2023 transfers from the UBS IRA rollover went to the Buckner Family Trust account rather than being divided as a percentage split between Hasan and the other listed beneficiaries, Hasan stated that she "was not aware of this[.]" (Tr. 38.)

{¶ 47} Buckner's final exhibit was Exhibit M, a February 2025 UBS statement for the Buckner Family Trust account, account number xxxx517. Hasan confirmed that the address on the statement was her home and that the specified value of the account as of February 28, 2025, was $45,407.28. (Tr. 38-39.) Asked whether she had added anything to the account apart from the total of $31,065.33 transferred from the UBS deposit account (xxxx711) and the UBS IRA rollover account (xxxx716), Hasan denied doing so and maintained that the increased value was because of investment returns. (Tr. 40.)

{¶ 48} Hasan asserted her Fifth Amendment rights when asked if there were other accounts or assets she accessed after her father's death. (Tr. 41.) Buckner then rested without calling additional witnesses.

{¶ 49} The trial court asked Hasan if she planned to submit evidence or call witnesses in her defense. Hasan first proclaimed her sovereign status, stating she was "indigenous and Aboriginal" and "Aboriginal to this land mass[.]" (Tr. 42.) She further claimed that the trial court had denied her constitutionally guaranteed right to counsel by not permitting her to consult with the two nonattorneys who had accompanied her to the hearing. (Tr. 42.) The trial court informed Hasan that it

was "not asking for a civics lesson" and again asked if she wished to present witnesses or evidence. (Tr. 42.)

{¶ 50} Hasan called Buckner to cross-examine him. Buckner confirmed he was Hasan's brother, and Hasan questioned him regarding proceeds from the $20,000 check discussed during her own testimony, asking him if he ever received a check in the amount of $3,333.33. Buckner acknowledged he received such a check. (Tr. 44.) Hasan further asked whether he recalled her asking that he sign a paper acknowledging receipt. Buckner responded: "I signed the paper." (Tr. 45.) He denied knowing what any other siblings received. He acknowledged that he remembered Hasan "passing out some envelopes" but stated he did not "know what was in them." (Tr. 45.)

{¶ 51} Hasan further asked Buckner whether he recalled receiving any letters indicating he was "a beneficiary to the Buckner Family Trust[.]" (Tr. 45.) Buckner responded that he "actually received one letter that [he] can remember." (Tr. 45.) The trial court marked a set of letters dated September 21, 2023, as Hasan's exhibit No. 1. The letters indicated that Hasan was the trustee of the Buckner Family Trust and that the five recipients were beneficiaries.

{¶ 52} The trial court marked a second set of letters as Hasan's exhibit No. 2. Those letters, addressed to the same five individuals, were dated October 1, 2023. They indicated that the "Buckner Family Trust has UBS assets only in the trust," that "[t]his trust was established on August 10, 2022," that it was "a private trust," and that the current assets in the trust account totaled $34,444.42.

{¶ 53} Rather than ask further questions regarding the letters, Hasan went down a path of questionable relevancy, asking Buckner, for example, if he made intemperate remarks to her and her children after the decedent's death. The trial court reminded Hasan that "the issue before the Court is — are the UBS accounts[.]" (Tr. 50.)

{¶ 54} Hasan secured an admission that Buckner cashed a check for $3,333.33. (Tr. 52.) After that she engaged in what the trial court observed was a combination of her own testimony and questioning regarding the nature of the trust and whether she was required to disclose more than the four pages she had provided. (Tr. 53-54.) Asked directly whether he was told the trust exists, Buckner responded: "I'm not exactly sure." (Tr. 55.) He did acknowledge, however that he thought he received "one letter from [Hasan] stating that — that I was a beneficiary; that she was the trustee; that she can't give me no more information when I ask for a copy. That's the only thing." (Tr. 57.)

{¶ 55} Hasan called Kenneth Hasan ("Kenneth") as her next witness. He testified that he was one of the trustees of the Buckner Family Trust and that Hasan had made him aware of the letters she sent to beneficiaries regarding the trust. (Tr. 63.) Kenneth testified that prior to the decedent's death he and Hasan were "on the phone with UBS from the year 2022" and that he "was assisting [Hasan] in regard to establishing the trust." (Tr. 65.) He claimed that he and Hasan were unaware until very recently that there were beneficiaries named with respect to the UBS IRA rollover account. (Tr. 65.)

{¶ 56} Kenneth further testified that because the decedent (his grandfather) had no will, an unspecified attorney advised him to set up a private trust, and that he "advised [Hasan] it was necessary and at [sic] best to put everything in trust." (Tr. 65-66.) Kenneth testified that all of this occurred prior to the decedent's death. (Tr. 65-66.) Kenneth, however, did not testify regarding dates with any precision, and no exhibits were placed before him. He nevertheless testified that "UBS processed everything after" the decedent's death. (Tr. 66.)

{¶ 57} Kenneth also testified that prior to his death, the decedent "was incapacitated." (Tr. 66.) He clarified, however, that this information came from Hasan, who "told [him] that" the decedent's physician "said . . . that he was incapacitated." (Tr. 66.) He attributed the "whole hold up" with UBS to his grandfather's incapacity. (Tr. 66-67.)

{¶ 58} On cross-examination, Kenneth was reminded of the timeline of events and asked specifically whether he or anyone had alerted UBS to his grandfather's death. (Tr. 68-69.) He claimed he "believe[d]" that he "issued them a death certificate" but could not recall "the exact time and date." (Tr. 69.) Kenneth was asked to explain why, if he gave UBS a death certificate, "they still allowed the transfer of an account with beneficiaries to a trust account[.]" (Tr. 69.) Kenneth did not seem to understand the question. After briefly suggesting that this was a matter for UBS's legal department, he claimed that he and his mother (Hasan) did not receive the exhibit listing beneficiaries until February and were previously unaware of the beneficiary designations. (Tr. 69.)

{¶ 59} The trial court, however, essentially repeated the preceding question: "The question was, did you ever inform UBS about Mr. Buckner's death? That was the question, okay?" (Tr. 70.) Kenneth responded that they "did alert UBS at the time of the death" but that he did not "know the time and date exactly." (Tr. 70.)

{¶ 60} Testimony concluded, and the trial court heard closing arguments. Buckner's counsel pointed to the withdrawal of $20,000 and the later transfers to the trust account, arguing that Hasan "has not presented any evidence that these transfers were initiated prior to [the decedent's] death[,]" that she "has not presented any evidence as to where this $3,333 came from[,]" and that "when she distributed that money is totally unclear." (Tr. 70-71.) With respect to the transfers to the trust account specifically, Buckner argued it was clear from the exhibits that the money was in the decedent's name when he died and was then "wrongfully concealed and transferred nine months later in June of 2023 into a trust account that was set up by [Hasan] in May of 2023." (Tr. 71.) Buckner requested that the assets be returned to the estate, plus a ten percent penalty pursuant to R.C. 2109.52 and attorney fees.

{¶ 61} Hasan argued that the decedent had "entrusted [her] to do what [she had] done" and that her "intent has never been to withhold or do anything." (Tr. 71.) She referenced the letter to her siblings and Buckner's admission that he had received a check for $3,333.33. She further argued that the UBS IRA rollover account, which specified beneficiaries, was not subject to probate, but that in any event she was never aware of the beneficiary designations. She asserted again that

"it was never [her] intent to hide anything" and that her father "knew that I would do the right thing." (Tr. 72.) She stated that there was a "verbal affidavit to take care of his property, everything, his assets." (Tr. 72.) At bottom, she argued, her "intent was to honor what [her] father wanted, not to deceive anybody or anything." (Tr. 74.)

{¶ 62} The trial court took the matter under advisement.

**2. The Trial Court's Concealment Decision**

{¶ 63} The trial court issued its decision in the concealment action on March 11, 2025. It found that the decedent had died on September 15, 2022, and that Buckner was the duly appointed administrator of his estate.

{¶ 64} Referencing Buckner's Exhibit A, the power of attorney document, the trial court noted that it granted power to Hasan only if the decedent became disabled or incompetent. It further noted that under subsection H, the holder had the power to "establish a revocable trust solely for the benefit of the principal that terminates at the death of the principal."

{¶ 65} The trial court found that the decedent held assets in his own name only in two separate UBS accounts, xxxx711 and xxxx716. With respect to the September 29, 2022 check drawn on account xxxx711 in the amount of $20,000, the trial court found that the check was made payable to the decedent but was endorsed by Hasan. The trial court concluded that the check was dated and endorsed, and the money withdrawn from account xxxx711, two weeks after the decedent's death. It

further found that as reflected in Exhibit E, the value of that account on the date of the decedent's death was $42,935.12.

{¶ 66} The trial court further found that Hasan opened the Buckner Family Trust account xxxx517 with UBS on March 25, 2023, eight months after the decedent's death. Then, on June 7 and 8, 2023, all the remaining money held in the decedent's two UBS accounts (xxxx711 and xxxx716) was transferred into the Buckner Family Trust account. The trial court explicitly relied on Buckner's Exhibits B, H, and I. It further held that the address listed on the Buckner Family Trust account was Hasan's address.

{¶ 67} Next, the trial court addressed Hasan's defenses, including her claim that she held power of attorney for the decedent and that "she created and signed the Buckner Family Trust . . . at his request." The trial court held that the trust document was not dated "and the document provided to Plaintiff's counsel at his request contains only four pages of a twelve-page document." The trial court acknowledged Hasan's claim that she distributed the $20,000 equally to herself and her siblings in the amount of $3,333.33 each but found that "no other evidence was submitted regarding alleged distributions or the source of money from which distributions were made."

{¶ 68} The trial court separately addressed the decedent's UBS IRA rollover account, xxxx716, finding that the account had a beneficiary designation "which named [Hasan] and three of her sisters to receive 25% each of the balance of the

account at the time of Buckner Sr.'s death." It found that at the time of the decedent's death, the balance of the UBS IRA rollover account was $11,364.71.

{¶ 69} Turning again to Hasan's defenses, the trial court noted Hasan's claim that she did not conceal the assets of the decedent, referencing not only her testimony but Hasan's exhibit Nos. 1 and 2, letters describing the Buckner Family Trust, and the UBS trust account. The trial court further noted, however, that Hasan "did not answer the question as to if or when she notified UBS of Buckner Sr.'s death." It further referenced Hasan's characterizations of the nature of the trust, including her claim that "she had no duty to provide the Trust to the beneficiaries."

{¶ 70} Addressing the testimony of Kenneth Hasan, the trial court found that while Kenneth testified that the decedent "became incapacitated at some point" he "did not provide a date, the nature of the incapacity, or any other evidence of incapacity."

{¶ 71} The trial court then stated its conclusions with respect to UBS account xxxx711. It first found that after the decedent's death, Hasan "utilized a Power of Attorney" to withdraw $20,000 from the decedent's UBS account xxxx711 and that the account did not have beneficiary designations and therefore "belonged to the Estate" of the decedent. Furthermore, it found that after the $20,000 withdrawal Hasan "then caused the balance" of UBS account xxxx711 "to be transferred to another account under her sole control."

{¶ 72} The trial court found that Hasan likewise caused the balance of the decedent's IRA rollover account, UBS account xxxx716, to be transferred to an

account under her sole control, but that the IRA rollover account had beneficiary designations. Accordingly, "had USB [sic] been informed of Buckner Sr.'s death, prior to the transfer of funds, the funds would have been distributed according to the designations."

{¶ 73} With respect to the validity of the trust, the trial court expressly rejected Hasan's arguments. It found that Hasan "failed to establish a legally recognizable Trust, or any valid authority to transfer decedent's funds to said Trust."

{¶ 74} The trial court then found Hasan guilty of conveying away and possessing money belonging to the estate of the decedent. Based on the date-of-death value of account xxxx711 of $42,935.12, the court entered judgment against Hasan in that amount plus the statutory ten-percent penalty in the amount of $4,293.51, for a total judgment of $47,228.63.[9] It ordered that the funds currently held in the trust account, UBS account xxxx517, be paid to the estate in partial satisfaction of the judgment.

{¶ 75} Consistent with its earlier findings, the trial court held that the UBS IRA rollover account xxxx716 had beneficiary designation and that even absent the wrongful conveyance would not have been an asset of the estate. The trial court noted that while the remaining beneficiaries might have a civil action against Hasan,

---

[9] The trial court's judgment calculations actually contain two typographical errors, but they are of little significance. The baseline number, the UBS xxxx711 date-of-death value of $42,935.12, is accurately drawn from Exhibit E. Ten percent of that amount is $4,293.51, but the trial court mistakenly specified $4,294.51, which suggests a scrivener's error of typing "4" rather than "3." Then, for the total judgment, the trial court specified $47,228.663. The correct final judgment, using the accurate ten percent figure, is $47,228.63. It appears the trial court inserted an errant extra "6."

such a claim was not properly the subject of a concealment action under R.C. 2109.50.

{¶ 76} Finally, the trial court ordered Hasan to pay costs, as well as "attorney fees upon application for said fees by counsel for the Estate."

### 3. The Attorney Fees Application, Hasan's Motions for Reconsideration, the Dismissed Appeal, and the Fee Hearing

{¶ 77} Buckner filed an application for attorney fees on March 26, 2025, seeking recovery of fees in the amount of $13,497 and court costs in the amount of $378.62, for a total recovery of $13,875.62. The application included two itemized billing statements marked as Exhibits A and B.

{¶ 78} Hasan filed an opposition brief on April 2, 2025. She argued, inter alia, that there were "unresolved legal questions surrounding the court's jurisdiction," her good faith, and unspecified "constitutional concerns." More specifically, she noted that she had filed a motion for reconsideration and stated she intended to file an appeal.

{¶ 79} In fact, Hasan had filed a motion for reconsideration on March 28, 2025. She also filed an amended motion for reconsideration on April 2, 2025. On April 4, 2025, the trial court scheduled the fee hearing for May 1, 2025.

{¶ 80} On April 9, 2025, prior to the trial court's taking any action on Hasan's two motions for reconsideration or Buckner's application for attorney fees, Hasan filed a notice of appeal. On April 14, 2025, this court dismissed the appeal sua sponte for lack of a final appealable order, noting that the application for attorney fees remained pending, that a hearing had in fact been scheduled for May 1, 2025,

and that the trial court's concealment judgment did not contain Civ.R. 54(B) language. After dismissal of the appeal, on April 29, 2025, the trial court journalized an entry denying Hasan's motions for reconsideration.

{¶ 81} The trial court held the fee hearing as scheduled on May 1, 2025. As discussed in more detail below, while the hearing was recorded, no transcript has been filed. The trial court found that the estate's attorney testified concerning the hours billed on the concealment case and the benefit to the estate by virtue of the judgment against Hasan. According to the court, however, Hasan "was focused on the underlying judgment resulting from the concealment action and only asked to clarify the total fees charged in this action." The entry does not indicate that the court accepted any additional exhibits. Rather, it explicitly cited the billing statements attached to the application for attorney fees, which it held described "in detail the work completed and the hourly rate charged." The trial court found that the hourly rate was actually "lower than the rate typically found to be customary and reasonable[.]" It therefore found the estate's motion "fair and reasonable," granted the motion, and granted judgment in favor of the estate and against Hasan in the amount of $13,875.62.

{¶ 82} Another flurry of filings followed. The only one relevant to this appeal is Hasan's May 8, 2025 motion for relief from judgment pursuant to Civ.R. 60(B).

{¶ 83} Hasan filed another notice of appeal on May 28, 2025, along with a motion to stay execution of judgment on May 29, 2025. On May 30, 2025, the trial

court denied Hasan's Civ.R. 60(B) motion. The trial court denied Hasan's motion to stay by order dated June 11, 2025.

{¶ 84} On June 16, 2025, Hasan filed an application to prepare transcripts of both the concealment hearing and the attorney fees hearing. The trial court granted the motion by entry dated June 23, 2025.

{¶ 85} At this point, as discussed above with respect to the separate fiduciary's complaint for authority to sell real estate, Hasan began filing identical pleadings in that action (2024ADV291482) and this action (2024ADV293661), including an affidavit of indigence and a motion to prepare the transcript at State's expense.

{¶ 86} The trial court denied Hasan's motion to prepare the transcript at State's expense on June 26, 2025, stating that "there is no statutory authority for providing a trial transcript at state expense for a civil action." On August 14, 2025, Hasan filed a proposed App.R. 9(C) statement regarding the May 1, 2025 fee hearing. As with Hasan's proposed App.R. 9(C) statement regarding the proceedings before the court magistrate in the action for sale of real estate, the trial court likewise rejected this narrative. In an order dated August 25, 2025, and docketed August 26, 2025, it again reasoned that there was "no assertion that a recording was not made or that a recording or transcript is unavailable." It then continued:

> The Court finds that Rule 9(C) is not applicable absent a finding that a recording or transcript is not available. The Court further finds that the proposed narrative attached to Defendant's Notice raises an issue as to

whether Defendant made her own recording of the proceedings in violation of this Court's Local Rule 54.

{¶ 87} On August 28, 2025, Hasan filed a notice with the trial court indicating that the transcript of the March 10, 2025 concealment hearing had been filed. More filings ensued. Most importantly, Hasan moved the trial court to supplement the record with the exhibits she had relied upon at the hearing, i.e., the letters marked as exhibit Nos. 1 and 2. By entry dated September 30, 2025, the trial court found that the record on appeal should be supplemented, if necessary, to include the two exhibits, which it had referred to in its March 11, 2025 judgment entry on concealment: "The Court finds and Orders that if Exhibits 1 and 2 were not transmitted to the Court of Appeals with the record of this case, they should now be submitted pursuant to App.R. 9(E)."

{¶ 88} Hasan attempted to supplement the record further. These efforts included the submission of proposed exhibits never used at trial or referred to in the trial court's concealment opinion or attorney fees order. The court denied Hasan's motion on November 3, 2025.

{¶ 89} On October 30, 2025, Hasan also sought probate court approval of a purported "corrected transcript" of the March 10, 2025 hearing. The trial court denied that motion by entry dated November 5, 2025.

**D. Relevant Filings and Orders During the Appeal**

{¶ 90} By order dated June 6, 2025, this court consolidated the two appeals. As referenced above, the appellate docket reflects that this court granted Hasan

multiple extensions to complete the record on appeal. It also granted extensions to brief the merits of the case.

{¶ 91} On August 28, 2025, this court denied Hasan's sixth motion for extension of time to complete the record. That order indicated that the appeal would proceed on the App.R. 9(A) record and set a due date for Hasan's brief. The same day, however, Hasan filed the transcript of the concealment hearing. On September 2, 2025, Hasan filed a notice indicating that while she had filed the transcript of the concealment hearing, she intended to rely on App.R. 9(C) statements for the hearing before the trial court magistrate in the action for sale of real estate and for the attorney fees hearing in the concealment action.

{¶ 92} This court, however, docketed an entry on September 4, 2025, noting that Hasan had not in fact filed any App.R. 9(C) statement, despite being granted multiple extensions:

> Sua sponte, pursuant to the appellant's notice regarding the record, the App.R. 9(B) record of part of the proceedings has been filed. An App.R. 9(C) statement as to hearings that were not transcribed has not been filed. Because numerous extensions were granted to allow the appellant to supplement the record with an App.R. 9(C) statement, no further extensions as to the filing of the App.R. 9(C) record will be considered. The appeal shall proceed forward on the App.R. 9(B) record. The appellant's brief is currently due September 16, 2025.

{¶ 93} Hasan continued to file App.R. 9(E) motions in this court seeking correction or supplementation of the record. Those motions, however, were principally aimed at supplementing the record with exhibits and making corrections to the transcript of the concealment hearing. This court, in an entry dated September 24, 2025, reminded Hasan that a "dispute as to the accuracy of the trial

court record is to be settled by the trial court pursuant to App.R. 9(E)." Quoting *State v. Schiebel*, 55 Ohio St.3d 71, 92 (1990), it further noted that "[i]t is not within our authority to 'resolve disputes about the trial court's record in the course of an appeal.'"

{¶ 94} As discussed above, Hasan did thereafter file a motion with the trial court with respect to certain exhibits that she had in fact used at trial, and the trial court granted her motion to supplement the record by order dated September 30, 2025. Accordingly, when Hasan filed a second App.R. 9(E) motion with this court on October 24, 2025, this court granted it in part based on the trial court's decision and its transmission of the referenced exhibits.

{¶ 95} On November 7, 2025, Hasan filed another App.R. 9(E) motion with this court. She sought both to correct the previously filed transcript of the concealment hearing and to supplement the record with certain exhibits that had not been offered or admitted during the hearing. These items had instead been attached to her motion for reconsideration, which the trial court had denied. This court denied the App.R. 9(E) motion by entry dated November 13, 2025. It noted that the probate court, which was "more familiar with the record than the court of appeals," had "denied the identical motion to supplement the record." On November 24, 2025, Hasan filed a motion for reconsideration of this court's November 13, 2025 decision. This court denied the motion for reconsideration on December 2, 2025.

**{¶ 96}** None of the App.R. 9(E) motions Hasan filed in this court addressed the trial court's refusal to approve the App.R. 9(C) statements of either the December 17, 2024 hearing before the trial court magistrate or the trial court's May 1, 2025 hearing on attorney fees.

## II. Assignments of Error

**{¶ 97}** Appellant presents eight assignments of error for our review. They are listed here verbatim:

1. The trial court erred in finding Appellant guilty of concealment under R.C. 2109.50-52 absent competent, credible evidence of concealment or wrongful intent or bad faith.

2. The trial court erred in applying R.C. 2109.52 to assets that were never concealed and were ultimately transferred into the trust.

3. The trial court erred in disregarding material evidence, demonstrating Appellant's good faith, including cashier's checks, notices to beneficiaries, financial-institution correspondence, the dated trust declaration page, and the medical provider's letter confirming Appellant's authority under the Power of Attorney.

4. The trial court erred in awarding attorney fees and costs against Appellant absence statutory or contractual authority and without evidence of bad faith, thereby imposing punitive sanctions contrary to Ohio law.

5. The trial court erred in its rulings that exceeded probate jurisdiction and denied Appellant due process by (1) treating private trust assets as probate property, (2) rejecting Appellant's App. R. 9(C) narrative in lieu of transcript, and (3) refusing Appellant reasonable assistance to manage exhibits, all of which deprived her of a meaningful opportunity to present her case.

6. The trial court erred in approving the sale of the Soika property without statutory compliance, unanimous informed consent of heirs, or proof of necessity and no estate debts existed and without sufficient evidence in the record to justify the sale.

7. The trial court erred by exceeded its authority by rejecting a valid express trust under R.C. 5804.02 and treating private trust assets as probate property without lawful jurisdiction or due process.

8. The trial court erred in ruling on Appellant's Civ. R. 60(B) motion after jurisdiction had vested in the Court of Appeals upon the filing of the Notice of Appeal rendering the trial court's order void.

{¶ 98} Several of Hasan's assignments of error are interconnected. For ease of analysis and discussion, we address some of her assignments of error together and out of order.

## III. Analysis

### A. First, Second, Third, and Seventh Assignments of Error

{¶ 99} Hasan's first, second, third, and seventh assignments of error all seek to challenge, through varying and overlapping means, the trial court's guilty finding in the concealment action. We find no merit to any of these assignments of error.

#### 1. Overview of R.C. 2109.50 and 2109.52 Proceedings

{¶ 100} Pursuant to R.C. 2109.50:

Upon complaint made to the probate court . . . by a person interested in the estate, testamentary trust, or guardianship . . . against any person suspected of having concealed, embezzled, or conveyed away or of being or having been in the possession of any moneys, personal property or choses in the action of the estate, testamentary trust, or guardianship, the court shall . . . compel the person or persons suspected to appear before it to be examined, on oath, touching the matter of the complaint.

{¶ 101} R.C. 2109.52 provides, in pertinent part:

When passing on a complaint made under section 2109.50 of the Revised Code, the probate court shall determine . . . whether the person accused is guilty of having concealed, embezzled, conveyed away, or been in the possession of moneys, personal property, or choses in action of the estate, testamentary trust, or guardianship. If the person

is found guilty, the probate court shall assess the amount of damages to be recovered or the court may order the return of the specific thing concealed or embezzled or may order restoration in kind. . . . In all cases, except when the person found guilty is the fiduciary, the probate court shall render judgment in favor of the fiduciary or if there is no fiduciary in this state, the probate court shall render judgment in favor of the state, against the person found guilty, for the amount of the moneys or the value of the personal property or choses in action concealed, embezzled, conveyed away, or held in possession, together with ten per cent penalty and all costs of the proceedings or complaint; except that the judgment shall be reduced to the extent of the value of any thing specifically restored or returned in kind as provided in this section.

{¶ 102} A concealment action is "'the proper tool to recover assets or money taken from an estate.'" *Roefer v. Riley*, 2025-Ohio-272, ¶ 32 (8th Dist.), quoting *Harrison v. Faseyitan*, 2004-Ohio-6808, ¶ 29 (7th Dist.). The Ohio Supreme Court described the "summary" and "inquisitorial" nature of the action as follows:

> A proceeding for the discovery of concealed or embezzled assets of an estate is a special statutory proceeding of a summary and inquisitorial character, and, since, under Section 2109.52, Revised Code, a finding of "guilty" or "not guilty" is required, with the imposition of a penalty upon a finding of guilty, the proceeding is quasi criminal in nature. Its purpose is to facilitate the administration of estates by expeditiously bringing into such estates those assets which rightfully belong there. *Goodrich v. Anderson*, 136 Ohio St. 509, 26 N.E.2d 1016; *In re Black's Estate*, 145 Ohio St. 405, 62 N.E.2d 90; *In re Leiby's Estate*, 157 Ohio St. 374, 105 N.E.2d 583.
>
> In the opinion in the case of *Davis v. Johnson*, 332 Mo. 417, 421, 58 S.W.2d 746, 748, it is remarked:
>
> "The procedure authorized by those statutes [for the discovery of assets] 'is a summary and quick method of bringing property into the estate' . . . devised not merely to discover assets, but also to expedite the administration of estates by affording a new and special remedy for collecting assets."

*Fife v. Beck (In re Estate of Fife)*, 164 Ohio St. 449, 453 (1956).

{¶ 103} The probate court's R.C. 2109.50 inquiry "'focuses on the ownership of the asset and whether possession of the asset is being impermissibly concealed or withheld from the estate.'" *Roefer* at ¶ 34, quoting *Wozniak v. Wozniak*, 90 Ohio App.3d 400, 407 (9th Dist. 1993). A plaintiff states an actionable case under R.C. 2109.50 "'if he alleges that the asset is the exclusive property of the estate and that the defendant has unauthorized possession of the asset or in some way has impermissibly disposed of it.'" *Roefer* at ¶ 34, quoting *Wozniak* at 407. In short, "'if a defendant takes a person's money after that person died . . . meaning that an estate was in existence at the time the money was taken, then a concealment action is proper.'" *Roefer* at ¶ 35, quoting *Harrison*, 2004-Ohio-6808, at ¶ 30 (7th Dist.).

{¶ 104} "The language in this statute indicates that concealment can occur in four different ways: concealment, embezzlement, *conveyance* or *possession* of an estate asset." (Emphasis added.) *Kish v. Kish*, 2006-Ohio-4686, ¶ 20 (7th Dist.). In the case of *In re Estate of Black*, 145 Ohio St. 405 (1945), the Ohio Supreme Court held that the statute "involves a charge of wrongful or criminal conduct." *Id.*, at paragraph one of the syllabus. This court's opinion in *In re Estate of Popp*, 94 Ohio App.3d 640 (8th Dist. 1994), cited *Black* and clarified the meaning of wrongful conduct under the statute. The *Popp* Court held that a financial institution that "conveys out money in its possession to an unauthorized individual without the consent of the deceased or his estate comes within the provisions of R.C. 2109.50 et seq" because such a conveyance actually "involves wrongful or culpable conduct[.]" *Id.* at 646. The *Popp* Court explained that "[a] complaint filed under R.C. 2109.50,

although quasi-criminal in character, is controlled by the laws governing civil proceedings in the probate court." *Id.* at 647. To support a finding of guilt under the statute, therefore, "all that is required is to show by a preponderance of evidence that the money belonged to the decedent; it is not necessary to establish that the conveyance was made with a fraudulent or criminal intent." *Id.*

{¶ 105} *Popp* remains good law, and other appellate districts have cited *Popp* and additional cases for the proposition that "it is well-settled law in Ohio that scienter is not an essential element of a cause of action under the concealment statute and that a finding of guilt under R.C. 2109.52 does not require fraudulent or criminal intent." *Kish* at ¶ 21, citing *Popp* at 647 and *State ex rel. Snearer v. Packer*, 4 Ohio Op. 347 (Probate Court of Tuscarawas County, May 28, 1935); *Lindquist v. Hayes*, 22 Ohio App. 141 (6th Dist. 1926); *In re Estate of Clay*, 1999 Ohio App. LEXIS 929 (3d Dist. Feb. 3, 1999). "Consequently, even though [a party] may not have had any fraudulent intent, this does not prevent a guilty finding on the concealment action." *Kish* at ¶ 21. *See also Letson v. McCardle*, 2010-Ohio-3681, ¶ 38 (11th Dist.).

{¶ 106} Moreover, "there is no constitutional impediment to drawing an inference against a party invoking the Fifth Amendment privilege in a civil case." *Cuyahoga Hts. Local School Dist. v. Palazzo*, 2016-Ohio-5137, ¶ 23 (8th Dist.), citing *Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976). Accordingly, "the rule in civil cases is that an adverse inference may be drawn against a party who invokes the Fifth Amendment privilege against self-incrimination." *Palazzo* at ¶ 24, citing *State*

*ex rel. Verhovec v. Mascio*, 81 Ohio St.3d 334 (1998), and *Tedeschi v. Grover*, 39 Ohio App.3d 109 (10th Dist. 1988). "The inference exists because a witness's assertion that the answer to a question might be self-incriminating proves that the witness engaged in some incriminating activity relative to the question." *Palazzo* at ¶ 24. *See also Estate of DeChellis v. DeChellis*, 2019-Ohio-3078, ¶ 54-57 (5th Dist.) (affirming use of adverse inferences where Fifth Amendment was invoked in an R.C. 2109.50 concealment proceeding).

{¶ 107} We review appellant's challenges to the trial court's guilty finding in a concealment action under a manifest-weight standard. *Castro v. Castro*, 2013-Ohio-1347, ¶ 19 (8th Dist.); *Kasick v. Kobelak*, 2009-Ohio-5239, ¶ 15 (8th Dist.). *See also Daddario v. Rose*, 2024-Ohio-5882, ¶ 65 (5th Dist.); *In re Estate of Green*, 2018-Ohio-710, ¶ 24 (12th Dist.). "As to civil judgments, '[j]udgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence.'" *Kasick* at ¶ 15, quoting *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279 (1978), syllabus. "When considering whether a civil judgment is against the manifest weight of the evidence, an appellate court is guided by a presumption that the findings of the trier of fact were correct." *Kasick* at ¶ 15, citing *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 79-80 (1984). Accordingly, "an appellate court should not substitute its judgment for that of the trial court when there exists, as in this case, competent and credible evidence supporting the findings of fact and conclusions of law rendered by the trial judge." *Seasons Coal Co.* at 80.

## 2. Analysis

{¶ 108} While the trial court found that Hasan had violated R.C. 2109.50, it did not use the word "concealment." Rather, it found Hasan "guilty of *conveying away* and *being in the possession of* moneys belonging to the Estate of Charles W. Buckner, Sr." (Emphasis added.) Our careful review of the record reveals that the trial court's findings in this regard are corroborated by competent and credible evidence.

{¶ 109} At the hearing, Buckner cross-examined Hasan using exhibits that allowed the trial court to follow the money. This exhibit-focused cross-examination provided ample evidence that after the decedent's death Hasan had deliberately, and without authorization, conveyed assets away from the estate and placed at least some of those assets into her own possession.

{¶ 110} The withdrawal of $20,000 from the decedent's UBS account xxxx711 on September 29, 2022, plainly occurred after the decedent's death on September 15, 2022. Confronted with her signature on the endorsement of the check, which was made payable to the decedent despite his death, Hasan asserted her Fifth Amendment rights. (Tr. 24.) She nevertheless admitted withdrawing the money, claiming that she distributed the proceeds to her siblings in the form of five checks, each in the amount of $3,333.33. This defense ignores two facts. First, it ignores that the mere act of conveying assets from the estate was sufficient to establish a violation of the statute. Second, it ignores that even if one accepts Hasan's statement that "there was a disbursement of $3,333.33 . . . to all siblings

[sic, next of kin] of" the decedent, (tr. 25), that means she helped herself to $3,333.33 that belonged to the estate. The trial court further made the factual finding that while Buckner acknowledged he received a check in that amount, there was "no other evidence . . . regarding alleged distributions or the source of money from which distributions were made."

{¶ 111} Buckner likewise established that several months after the decedent's death, Hasan opened a new UBS account, the "Buckner Family Trust" account number xxxx517, with her home address specified as the associated address. The paper trail established that a few weeks later Hasan liquidated the decedent's UBS accounts, transferring the money into the Buckeye Family Trust account.

{¶ 112} While Hasan consistently argued that she had asked UBS to establish the trust account before the decedent's death and that she attempted to move the decedent's money into that account before his death, the trial court's factual findings reflect that it found this explanation not credible. This is not surprising. Not only did the transfers occur in June 2023, almost nine months after the decedent's death, but the UBS paperwork associated with opening the UBS account for the trust, signed by Hasan herself, is hand-dated May 25, 2023.[10] We decline to second-guess the trial court's credibility findings. This court has consistently held:

> "The credibility of a witness is primarily for the trier of fact to assess." *Khatib v. Peters*, 2017-Ohio-95, 77 N.E.3d 461, ¶ 28 (8th Dist.). "The underlying rationale of giving deference to the findings of the trial court

---

[10] The trial court's opinion indicates the account was opened "March 25, 2023." The trial court's opinion further states, however, that the account was opened "eight months after" the decedent's death. Furthermore, the relevant exhibit plainly specifies a date of May 25, 2023. This appears to be an inconsequential typographical error.

rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984).

*Machen v. Miller*, 2024-Ohio-1270, ¶ 74 (8th Dist.).

{¶ 113} Hasan cites *Ukrainiec v. Batz*, 24 Ohio App.3d 200 (9th Dist. 1982), for what another court described as that case's "apparent conclusion that good faith possession is always a defense to a charge of concealment under R.C. 2109.50." *In re Estate of Clay*, 1999 Ohio App. LEXIS 929, at *11, fn. 1 (3d Dist. Feb. 3, 1999). In *Clay*, the Third District not only found this flatly "incorrect" but in so doing relied on this court's holding in *Popp* that "scienter is not an essential element" and that the statute "does not require fraudulent or criminal intent." *Clay* at *11, fn. 1.

{¶ 114} The Seventh District has likewise explicitly rejected the holding in *Batz*. It wrote that "under the statute, possession of the asset can result in a guilty finding on the concealment action[.]" *Kish*, 2006-Ohio-4686, at ¶ 20 (7th Dist.). Accordingly, it stated that "[l]ike the Third Appellate District, we disagree with the *Batz* rationale that mere possession of an estate asset cannot amount to concealment." *Id.*, citing *Clay* at ¶ 11, fn. 1.

{¶ 115} Hasan also cites *Longworth v. Childers*, 2008-Ohio-4927 (2d Dist.), for essentially the same proposition. There, "the court found Childers guilty of concealing assets based solely on her possession of the assets in question." *Id.* at ¶ 17. *Longworth*, however, is distinguishable. The present case does not involve

mere possession of estate assets. The trial court found that Hasan knowingly conveyed away money belonging to the estate.

{¶ 116} Like the appellant in *Singhaus v. Johnson*, 2010-Ohio-6270 (7th Dist.), Hasan focuses her first assignment of error on the argument that "even if the evidence showed cash existed that belonged to the estate, there was no evidence that she tried to prevent the discovery of the cash as is required to prove concealment." *Id*. at ¶ 32. The *Singhaus* Court rejected that argument:

> "Just from the plain language of the statute [R.C. 2109.50], it is apparent that the assets or money need not have been 'concealed' in the strict sense of the word. Specifically, the statute allows examination of anyone suspected of having 'concealed, embezzled, or conveyed away or of being or having been in the possession' of estate assets. Thus, appellant's suggestion that there was no evidence of concealment (because she never hid the transactions) is clearly misguided."

*Id*. at ¶ 34, quoting *Harrison*, 2004-Ohio-6808, at ¶ 27 (7th Dist.). The court also reiterated that in *Kish*, 2006-Ohio-4686 (7th Dist.), it had disagreed "with the . . . rationale that mere possession of an estate asset cannot amount to concealment." *Singhaus* at ¶ 34, citing *Kish* at ¶ 20. As a result, even if the appellant "'may not have "hid" or attempted to "prevent the discovery of" the cash belonging to the estate this would not have precluded a finding that she was guilty of concealing assets belonging to the estate.'" *Singhaus* at ¶ 35.

{¶ 117} This disposes of Hasan's first assignment of error. These same conclusions also largely dispose of the "good faith" components of Hasan's second assignment of error, in which she principally argues that "[t]he record shows the

funds at issue were not concealed" but rather "were openly withdrawn" and later either distributed among the siblings or were "subsequently" placed into a trust.

{¶ 118} In related fashion, in her seventh assignment of error, Hasan argues — at least with respect to the Buckner Family Trust account — that the trial court exceeded its authority by rejecting the purportedly valid trust and "treating private trust assets as probate property without lawful jurisdiction or due process."[11] Hasan's arguments misconstrue the trial court's decision. The trial court did not treat trust assets as probate property. It found that Hasan had not presented evidence of a valid trust but also, more importantly, that after the decedent's death she had transferred money from an account titled to the decedent into an account under her control.

{¶ 119} These findings are supported by the record. Hasan argues in her seventh assignment of error that the Buckner Family Trust is a "valid express trust" under R.C. 5804.02. At the hearing, however, Hasan provided merely four pages of a purported trust document that (according to its internal page numbering) consisted of at least twelve pages. Hasan conceded that she had not provided the full trust document to opposing counsel. She even attempted to elicit a legal opinion from a lay witness to confirm she was not required to do so. (The trial court did not permit the lay witness to offer legal conclusions.)

---

[11] Hasan's fifth assignment of error, addressed below, consists of unrelated subparts. It also includes an argument that the trial court erred by "treating private trust assets as probate property." That aspect of Hasan's fifth assignment of error is resolved by the present discussion.

{¶ 120} Hasan claims the trust is valid pursuant to R.C. 5804.02, but the provided pages do not specify that the trustee has duties to perform, as required by R.C. 5804.02(A)(4). Furthermore, the referenced "schedule" of beneficiaries in the exhibit was not among the four pages provided to counsel and the trial court, so there is no way to confirm that the alleged trust has one or more definite beneficiaries under R.C. 5804.02(A)(3) or that beneficiaries "can be ascertained now or in the future, subject to any applicable rule against perpetuities" in satisfaction of R.C. 5804.02(B). If the incompleteness of the purported trust document were not enough, under the heading "ARTICLE III. GOVERNING LAW," section 3.01 states: "The Trust shall only be governed under the Laws of Nature and Nature's God."

{¶ 121} Appellant also failed to establish that she possessed the authority to create a trust that survived the decedent's death. Appellant admitted that she signed the decedent's name to the purported trust document pursuant to a power of attorney. Putting aside the lack of evidence that the decedent was incompetent at this point — a requirement to invoke the power of attorney — by its terms the power of attorney admitted as Exhibit A authorized appellant only to "establish a revocable trust solely for the benefit of the principal that terminates at the death of the principal and is then distributable to the legal representative of the estate of the principal[.]" Exhibit A, subsection (H). Hasan nevertheless claimed at trial that the trust she allegedly established during the decedent's life, using her purported authority as power of attorney, continued to exist after his death.

{¶ 122} We therefore cannot find that the trial court erred in concluding that Hasan "failed to establish a legally recognizable Trust, or any valid authority to transfer decedent's funds to said Trust." We agree with Hasan that the trial court appeared to have overlooked the typewritten date on Exhibit C, which indicates that the purported trust was established on August 10, 2022, just over a month before the decedent's death. This error, however, does not affect the outcome because neither the exhibits admitted at trial nor Hasan's testimony established a valid trust at all, much less a trust that would exist beyond the decedent's death. The trial court expressly found, consistent with the power of attorney, that it granted power to Hasan only in the event the decedent became disabled or incompetent. Hasan submitted no documentation establishing the decedent's incompetency or disability at the time the trust was purportedly created. Even if she had, the power of attorney permitted only the establishment of a revocable trust for the benefit of the principal that would terminate at the principal's death.

{¶ 123} Finally, we stress that the validity of the purported trust is something of a red herring. The trial court's essential finding was that after the decedent's death, Hasan conveyed away estate assets. Even if Hasan had been authorized to move money prior to the decedent's death under the power of attorney, that authority terminated upon the decedent's death. *See* R.C. 1337.30(A)(1). "It is well-settled that an agency relationship conferred by a power of attorney terminates with the principal's death." *Estate of Short v. Ward (In re Blackburn)*, 2006-Ohio-406, ¶ 20 (4th Dist.), citing, inter alia, *McDonald v. Black's Admr.*, 20 Ohio 185 (1851),

at paragraph three of the syllabus; *Santa v. Ohio Dept. of Human Serv.*, 136 Ohio App.3d 190, 193 (8th Dist. 2000).

{¶ 124} In other words, as noted above, even if a valid trust existed, the trial court found that Hasan had not demonstrated "any valid authority to transfer decedent's funds" to a trust. That finding is amply supported by competent, credible evidence. While Hasan argues in her seventh assignment of error that trusts are "not subject to probate jurisdiction once funded," she cites two cases, now stricken pursuant to a separate order of this court, that do not stand for that proposition. Much more importantly, she overlooks that the trial court focused on funds transferred from an account titled to the decedent and into the Buckner Family Trust UBS account many months after his death. Even if the trust were valid, and even if the trial court had accepted Hasan's contention that she instructed UBS to effect the transfers before her father's death, there is no dispute that she signed the document creating the UBS account in May 2023, eight months after the decedent's death, and thereafter conveyed money away from the estate. This was a concealment action under R.C. 2109.50, not an action seeking to have a trust declared invalid, and the trial court did not "override a valid trust absent a proper legal proceeding contesting its validity." (Hasan's brief at p. 21.) The trial court found that Hasan had conveyed money away from the estate into a UBS account that she controlled. Hasan has presented no authority suggesting that the mere fact that the receiving account was labeled the "Buckner Family Trust" makes any difference

under R.C. 2109.50, i.e., that money wrongfully conveyed from the estate into a trust account may not be recovered.

{¶ 125} In her third assignment of error, appellant again argues that she acted in good faith. In addition to arguments made in her first, second, and seventh assignments of error, she points to the exhibits she offered at the hearing and that were admitted into evidence, including letters to purported beneficiaries of the Buckner Family Trust. Such arguments were disposed of above. Regardless of Hasan's claimed good faith, the trial court could properly determine, based upon the evidence and applicable law, that appellant conveyed away and possessed estate assets after the decedent's death.

{¶ 126} To the extent Hasan's third assignment of error (or any others) relies on materials submitted only with her motions for reconsideration, including a "medical provider's letter confirming [her] authority under the Power of Attorney" or certain cashier's checks, we reject appellant's attempt to attack the trial court's judgment using documents (which she terms "exhibits") neither offered nor admitted at the hearing. Hasan has not separately appealed the denial of her motions to reconsider the trial court's interlocutory concealment order, she has not separately assigned error to the trial court's denial of her original or amended motion for reconsideration, and she has not argued that the trial court abused its discretion in denying her motions to reconsider. *See Kostoglou v. Fortuna*, 2019-Ohio-5116, ¶ 14 (8th Dist.); *Floering v. Huering*, 2001 Ohio App. LEXIS 5788, *2, fn. 1 (6th Dist. December 21, 2001). We therefore decline to consider the denial of

the motions to reconsider as an independent basis for reversal, and the exhibits attached thereto are not part of the evidentiary record on which the concealment decision is reviewed. "[A] reviewing court cannot consider evidence that a party added to the trial court record after the trial court's judgment, and then decide an appeal from the judgment based on the new evidence." *Chester/12 Ltd. v. Epiq Constr. Servs.*, 2023-Ohio-1886, ¶ 29 (8th Dist.).

{¶ 127} Even if we entertained Hasan's arguments, however, they lack merit. The denial of a motion for reconsideration of an interlocutory order is reviewed for abuse of discretion. *Kostoglou* at ¶ 18; *Williams v. Hung*, 2024-Ohio-5093, ¶ 56 (8th Dist.). The exhibits attached to Hasan's original motion for reconsideration were not offered or admitted at the hearing, were not authenticated through testimony, and were not subject to testing through cross-examination of Hasan or other witnesses. Hasan did not claim that the documents were newly discovered or previously unavailable. She also did not attempt to authenticate the new exhibits via affidavit. The trial court denied reconsideration and did not reopen the matter to take further evidence. A trial court "abuses its discretion when it exercises its judgment in an unwarranted way with respect to a matter over which it has discretionary authority." *Hunter v. Troutman*, 2025-Ohio-366, ¶ 64 (8th Dist.), citing *Johnson v. Abdullah*, 2021-Ohio-3304, ¶ 35. "The term abuse of discretion implies that the court's attitude is unreasonable, arbitrary, or unconscionable." *Hunter* at ¶ 64, citing *Blakemore v. Blakemore*, 5 Ohio St.3d 217 (1983). Here, we cannot conclude that the trial court abused its discretion by declining to reopen the

record to consider post-hearing exhibits that were never admitted into evidence, that Buckner had no opportunity to contest via cross-examination, and which Hasan did not even claim were unavailable or newly discovered. *See Hung* at ¶ 92 (rejecting belated affidavit submitted with motion for reconsideration where such evidence could have been offered previously).

{¶ 128} In all respects, Hasan's first, second, third, and seventh assignments of error are overruled.

## B. Fifth Assignment of Error

{¶ 129} In her fifth assignment of error, Hasan argues that the trial court denied her due process rights by (1) rejecting the two App.R. 9(C) statements she offered in lieu of paying for transcripts; (2) "refusing her request for limited assistance of counsel to manage exhibits"; and (3) "disregarding" evidence such as the power of attorney and the trust declaration page.

{¶ 130} We address these arguments in reverse order. The third item on appellant's list was resolved in our preceding discussion. There is nothing to suggest that the trial court disregarded evidence, including the power of attorney or the alleged trust. The trial court expressly considered these exhibits and associated testimony. Hasan merely disagrees with the trial court's findings and conclusions. As discussed above, the trial court's decision was supported by competent, credible evidence, was not against the manifest weight of the evidence, and did not misapply the law.

{¶ 131} Hasan's argument that she was denied "limited assistance of counsel" merits little discussion. It is worth noting, however, that Hasan is not advancing an argument for what commentators have termed "civil *Gideon,*" i.e., that the trial court should have appointed an attorney to represent her.[12] If she had, she would not have been terribly off the mark, because a proceeding under R.C. 2109.50 is quasi-criminal in nature. The right to counsel, however, extends only to proceedings that might result in imprisonment. *Argersinger v. Hamlin*, 407 U.S. 25 (1972). "This general rule has been applied by the courts of this state." *Kovach v. Bustardo*, 1994 Ohio App. LEXIS 462, *9 (11th Dist. Feb. 11, 1994). As the *Kovach* Court explained in the context of a concealment action:

> Pursuant to R.C. 2109.52, if a person is found guilty of embezzling or concealing an estate asset, a probate court can order that person to pay the value of the item, plus a ten percent penalty, to the estate or the state. However, the probate court cannot impose a term of imprisonment as part of the "sentence." In this respect, the proceeding under R.C. 2109.50 is no different than a criminal minor misdemeanor proceeding in which the defendant can only be fined if found guilty. Thus, we conclude that the court referee was not required to inform appellant of her right to counsel prior to beginning the hearing on her complaint.

*Id.* at *10. *See also State v. Harmon*, 2017-Ohio-320, ¶ 35-36 (5th Dist.) (finding the ten percent penalty civil in nature). Hasan was therefore not entitled to appointed counsel.

---

[12] *See, e.g.*, Shera C. Grant, *Civil Gideon: A Judge's Perspective on the Right to Counsel in Eviction Cases*, 20 Stan. J. C.R. & C.L. 101 (2024), available at https://perma.cc/BR4L-VDN3.

{¶ 132} Furthermore, this is not a case in which the trial court precluded an actual attorney from assisting Hasan. Instead, Hasan contends she was unconstitutionally denied the assistance of the nonattorneys who accompanied her to the hearing. The trial court permitted these individuals to sit with Hasan at counsel's table for moral support. They remained there even while Hasan was cross-examined, which is noteworthy because Hasan never took the witness stand but instead testified while sitting at the table. The transcript further reflects that these individuals attempted to advise Hasan during her testimony.

{¶ 133} "The law recognizes that a person has the inherent right to proceed pro se in any court, but that right pertains only to that person." *State v. Block*, 2007-Ohio-1979, ¶ 4 (8th Dist.). Hasan cites no authority establishing a constitutional right to receive legal assistance from nonattorneys during a court proceeding. Indeed, this court has previously rejected the argument "that the right to counsel guaranteed by the Sixth Amendment includes the right to proceed with the assistance of a non-licensed attorney or layperson." *Shaker Hts. v. Carroll*, 1987 Ohio App. LEXIS 6993, *3-4 (8th Dist. Mar. 5, 1987). "There is no constitutional right to representation by non-lawyers or laymen." *Id.* at *4. Finally, "[t]he refusal to permit a layperson to represent the appellant does not violate appellant's constitutional rights to freedom of speech, freedom of association, and due process of law." *Id.* Moreover, "[j]udges have the ethical duty to prevent the unauthorized practice of law." *Block* at ¶ 6. The trial court did not err in limiting the role of Hasan's nonattorney entourage to moral support.

{¶ 134} Our discussion of Hasan's arguments regarding the trial court's rejection of her proposed App.R. 9(C) statements requires separate analysis for each hearing. Because one hearing occurred before a trial court magistrate and the other before the trial court itself, different subsections of App.R. 9(C) apply.

{¶ 135} Hasan claimed to be indigent and unable to afford transcripts.[13] The trial court held, with respect to both hearings, that a transcript is not "unavailable" under App.R. 9(C) simply because a civil litigant cannot afford it. That holding was incorrect. "For purposes of App.R. 9(C), a transcript is 'unavailable' if the appellant is indigent." *State ex rel. Pallone v. Ohio Court of Claims*, 2015-Ohio-2003, ¶ 4, fn. 1, citing *State ex rel. Motley v. Capers*, 23 Ohio St.3d 56, 58 (1986). The issue then becomes the trial court's obligations under the separate sections of App.R. 9(C) governing proposed statements generally versus proposed statements related to proceedings before a trial court magistrate.

### 1. Hearing Before a Magistrate

{¶ 136} A trial court magistrate presided over the hearing on the action for authorization to sell real estate. Hasan filed objections, but she did not file either a transcript or a Civ.R. 53(D)(3)(b)(iii) affidavit within 30 days thereafter. Civ.R. 53(D)(3)(b)(iii) provides that an objection to a magistrate's factual findings "shall be supported by a transcript of all the evidence submitted to the magistrate relevant to that finding" or, if a transcript is unavailable, "an affidavit of that evidence" or —

---

[13] Because our findings are not dependent on whether Hasan was or is truly indigent, we do not decide that issue.

with leave of court — an acceptable alternative.  "The objecting party shall file the transcript or affidavit with the court within thirty days after filing objections unless the court extends the time in writing for preparation of the transcript or other good cause." *Id.*  Hasan filed no transcript or affidavit either with her objections or within 30 days after filing her objections.  She also did not seek leave to submit anything via "alternative technology or manner of reviewing the relevant evidence." *Id.*

{¶ 137} "When an objecting party fails to support objections to a magistrate's factual findings, as required by Civ.R. 53(D)(3)(b)(iii), "'the trial court may properly adopt [the] magistrate's *factual findings* without any further consideration."'" (Emphasis added.) *In re Estate of Schwarzbach*, 2025-Ohio-4925, ¶ 12 (10th Dist.), quoting *Black v. Columbus Sports Network, L.L.C.*, 2014-Ohio-3607, ¶ 16 (10th Dist.), quoting *Estate of Stepien v. Robinson*, 2013-Ohio-4306, ¶ 28 (11th Dist.). "The trial court may then 'examine only the magistrate's *legal conclusions* based upon those facts.'" (Emphasis added.) *In re Estate of Schwarzbach* at ¶ 12, quoting *Dale v. Ohio State Hwy. Patrol*, 2005-Ohio-3383, ¶ 18 (10th Dist.).  In other words, the trial court's review is "'necessarily limited to the magistrate's conclusions of law.'"  *Ferrell v. Cole*, 2024-Ohio-3305, ¶ 11 (8th Dist.), quoting *Vannucci v. Schneider*, 2017-Ohio-192, ¶ 17 (8th Dist.).  As this court recently explained:

> When a matter is tried to a court magistrate, Civ.R. 53 requires that "[a]n objection to a factual finding, whether or not specifically designated as a finding of fact under Civ.R. 53(D)(3)(a)(ii), shall be supported by a transcript of all the evidence submitted to the magistrate relevant to that finding or an affidavit of that evidence if a transcript is not available." Civ.R. 53(D)(3)(b)(iii).  In the absence of a transcript or a properly filed affidavit of the evidence in support of a

party's objections, a trial court is "required to accept the magistrate's findings of fact and examine only the legal conclusions based on those facts." *Galewood v. Terry Lumber & Supply Co.*, 2002-Ohio-947, ¶ 10 (9th Dist.), citing *State ex rel. Duncan v. Chippewa Twp. Trustees*, 73 Ohio St.3d 728, 730, 1995-Ohio 272, 654 N.E.2d 1254 (1995).

*Fig As Custodian for Fig Ohio18, L.L.C. v. Lynch*, 2024-Ohio-3196, ¶ 20 (8th Dist.).

{¶ 138} Moreover, in the absence of compliance with Civ.R. 53(D)(3)(b)(iii), it is not only the trial court's review that is restricted when reviewing a party's objections but our review as well. "[T]he court of appeals cannot consider evidence that the trial court did not have when it made its decision." *Id.* "In such circumstances, an appellate court's review is limited to determining 'whether the trial court abused its discretion in applying the law to the magistrate's findings of fact.'" *In re Estate of Schwarzbach* at ¶ 13, quoting *Dale* at ¶ 18. *See also Lynch* at ¶ 21 ("Appellate court review in such instances is likewise limited to whether the trial court's application of the law to the factual findings was an abuse of discretion."); *Evans v. Davis*, 2026-Ohio-1050, ¶ 10 (8th Dist.).

{¶ 139} This matters significantly to Hasan's App.R. 9(C) argument as it pertains to the hearing held before the trial court magistrate. App.R. 9(C)(2) provides:

> In cases initially heard in the trial court by a magistrate, a party may use a statement under this division in lieu of a transcript if the error assigned on appeal relates solely to a legal conclusion. *If any part of the error assigned on appeal relates to a factual finding*, the record on appeal shall include a transcript or affidavit previously filed with the trial court as set forth in Civ.R. 53(D)(3)(b)(iii), Juv.R. 40(D)(3)(b)(iii), and Crim.R. 19(D)(3)(b)(iii).

(Emphasis added.) According to the Ohio Supreme Court, this provision, the result of an amendment effective in 2013, merely "codified existing case law." *Pallone*, 2015-Ohio-2003, at ¶ 13. The Ohio Supreme Court quoted the Staff Note to the July 1, 2013 amendment:

> "App.R. 9 is amended to clarify that a statement of the evidence or proceedings in lieu of an unavailable transcript (under App.R. 9(C)) . . . is available only in limited circumstances in cases originally heard by a magistrate. One of the predicates for appealing from a factual finding in cases initially heard by a magistrate is that the trial judge must have had an adequate opportunity to conduct a full review of the factual finding. That full review is not possible unless the appellant provided the trial court with an adequate description of the evidence presented to the magistrate—either through a transcript or, if a transcript is unavailable, an affidavit describing that evidence . . . . Case law already provides that an appellate court will not review factual findings on appeal unless the appellant provided the trial court with that description of the evidence and that a statement under App.R. 9(C) or App.R. 9(D) does not overcome this problem . . . . But appellants nevertheless continue to attempt to use such statements in these circumstances, suggesting a need for more explicit guidance in the rule."

*Pallone* at ¶ 13, quoting Staff Note to the July 1, 2013 amendment to App.R. 9(C). The staff notes do recognize, however, the propriety of an App.R. 9(C) statement if there is a need for some record of what occurred at the hearing unrelated to a challenge to factual findings:

> On the other hand, the absence of a transcript or affidavit at the trial court level should not preclude appellate review of a legal determination, so long as the appellant complied with the objection requirements of the applicable magistrate rule. *If there is a need for a record of what occurred at a hearing or trial*, a statement under App.R. 9(C) or App.R. 9(D) is an acceptable record in an appeal in a case originally tried to a magistrate *if the appellant does not intend to challenge factual findings* and has properly objected below.

(Emphasis added.) Staff Note to the July 1, 2013 amendment to App.R. 9(C).

{¶ 140} In *Pallone*, the relator sought a writ of mandamus to compel the Court of Claims to approve his App.R. 9(C) statement. The Ohio Supreme Court refused to issue the writ because the case had been tried before a magistrate and Pallone had failed to comply with Civ.R. 53(D)(3)(b)(iii). It therefore held that "a writ of mandamus to compel the Court of Claims to approve Pallone's App.R. 9(C) statement would be a vain act." *State ex rel. Pallone* at ¶ 10. The Ohio Supreme Court explained that "[t]he fact that the party later supplies a statement under App.R. 9(C) is of no consequence; the appellate court is still precluded from reviewing the factual findings." *Id*. at ¶ 11. "In plain terms, the court of appeals cannot consider evidence that the trial court did not have when it made its decision." *Id*.

{¶ 141} Hasan is therefore precluded from using an App.R. 9(C) statement to challenge any factual findings made by the magistrate. While this is not a mandamus action, it is apparent that the attempt to supply an App.R. 9(C) statement was a vain act because of the trial court's obligation to accept the magistrate's factual findings and our inability to review those factual findings. Simply put, Hasan waived all challenges to factual determinations by failing to comply with Civ.R. 53(D)(3)(b)(iii). *See Thomas v. Salahaldin*, 2024-Ohio-3298 (8th Dist.). In that case, like here, the appellant filed timely objections but failed to include an affidavit pursuant to Civ.R. 53(D)(3)(b)(iii). On appeal, the trial court indicated it could not approve Thomas's proposed App.R. 9(C) statement of facts. This court held that Thomas had "waived any challenge to factual findings made by

the magistrate in the municipal court, and we must presume regularity of the municipal court proceedings" because "there is no record of the trial for this court to review." *Id.* at ¶ 10.

{¶ 142} Furthermore, while Hasan raised objections to the magistrate's legal conclusions, her arguments in that respect are based purely on statutory construction. We are not precluded from reviewing legal conclusions based on the underlying accepted facts, and indeed we address Hasan's statutory-construction arguments below. Finally, Hasan has not argued that there is any need for an App.R. 9(C) statement record of what occurred at the hearing in order to challenge the magistrate's or trial court's legal reasoning. Given Hasan's limited challenge in that regard, i.e., her arguments regarding statutory construction, the approval of an App.R. 9(C) statement pertaining to the hearing before the court magistrate would have been a vain act.

### 2. Hearing Before the Trial Court on Attorney Fees

{¶ 143} The attorney fees hearing, by contrast, was held before the trial court rather than a court magistrate. This presents none of the complications of App.R. 9(C)(2). Furthermore, we have already noted that the trial court was incorrect in flatly rejecting Hasan's request to approve an App.R. 9(C) statement where her request rested on her claim of indigence. Hasan, however, failed to follow the paths that would have allowed this issue to be addressed before it landed as an assignment of error in her merit brief. In addition, she has not demonstrated that she was

prejudiced by the trial court's refusal to approve an App.R. 9(C) statement regarding the fees hearing.

{¶ 144} We cannot address, as an assignment of error, the trial court's flat refusal to consider any App.R. 9(C) statement. "[T]he court of appeals cannot resolve disputes about the trial court's record in the course of an appeal." *State v. Schiebel*, 55 Ohio St.3d 71, 82 (1990), citing *Associated Estates Corp. v. Fellows*, 11 Ohio App.3d 112, 114 (8th Dist. 1983). Instead, "[w]hen the appellate court must resolve factual disputes about the trial court's record, mandamus is the sole appropriate remedy." *Associated Estates Corp.* at 114.

{¶ 145} In other words, where a trial court refuses to even consider a proposed App.R. 9(C) statement, as it did here, one clear path to challenging the trial court's purported failure to perform its duties is "instituting an original action to compel performance," i.e., a writ of mandamus or procedendo. *State v. McBride*, 2025-Ohio-2309, ¶ 17 (11th Dist.). The Ohio Supreme Court has stated that "[m]andamus or procedendo may be appropriate to compel a trial court to correct alleged errors in the record if the trial court refuses to act." *State ex rel. Martinelli v. Corrigan*, 68 Ohio St.3d 362, 363 (1994). Indeed, *Pallone*, 2015-Ohio-2003, concerned a writ of mandamus seeking to compel the Court of Claims to settle and approve an App.R. 9(C) statement. While the relator in that matter was unsuccessful, that case demonstrates the correct path to follow when the trial court refuses to act. *See also Javitch Block, LLC v. Shaughnessy*, 2021-Ohio-436 (8th Dist.) (writs of mandamus and procedendo to compel trial court to settle and

approve an App.R. 9(C) statement); *Rolfe v. Hayes*, 2007-Ohio-1282 (8th Dist.) (writ of mandamus).

{¶ 146} Hasan could also have called the issue to this court's attention in a timely fashion, triggering at least the possibility of a limited remand before the record was deemed complete and the case was ready for briefing on the merits. App.R. 9(E) makes provision for the correction or supplementation of the record where material omissions have occurred by "error or accident." On August 27, 2025, two days after the trial court denied any consideration of an App.R. 9(C) statement, Hasan filed with this court a motion for extension of time to complete the record. It makes no mention of the trial court's ruling indicating it would not approve any offered App.R. 9(C) statement. On September 19, 2025, Hasan filed a motion to correct the record pursuant to App.R. 9(E) with what she described as missing beneficiary notices. She again made no mention of the App.R. 9(C) issue.

{¶ 147} Next, Hasan filed a motion for leave to supplement the record pursuant to App.R. 9(E) on October 24, 2025. That motion likewise did not reference the trial court's refusal to consider an App.R. 9(C) statement. Hasan filed additional pleadings referencing App.R. 9(E) on October 31, 2025, and November 7, 2025, still with no mention of the App.R. 9(C) issue.

{¶ 148} In short, Hasan did not request a remand, she did not file a motion seeking to correct the record with respect to the trial court's refusal to entertain any App.R. 9(C) statement, and she neither requested nor obtained an extension of time specifically premised on the trial court's refusal. Having failed to call the issue to

this court's attention prior to the case being briefed on the merits, appellant cannot now assign error to the trial court's refusal to entertain her App.R. 9(C) statement. *Schiebel*, 55 Ohio St.3d at 82 (1990). *See also Cleveland v. Brown*, 2026-Ohio-1046, ¶ 13 (8th Dist.) (motion for remand denied because appellant had already filed his merit brief, and therefore a remand to clarify "inaudible" portions of transcript was moot). Instead, in the absence of a transcript, a statement of the evidence or proceedings under App.R. 9(C), or an agreed statement under App.R. 9(D), we presume the regularity of the trial court proceedings. *Knapp v. Edwards Laboratories*, 61 Ohio St.2d 197, 199 (1980); *Richmond Hts. v. Turner*, 2025-Ohio-5347, ¶ 7 (8th Dist.); *Am. Express Natl. Bank v. Reynolds*, 2025-Ohio-4470, ¶ 8 (8th Dist.).

{¶ 149} Nevertheless, and even if we could address the App.R. 9(C) issue as an assignment of error, Hasan's argument fails because of her inability to demonstrate prejudice. The subject of the hearing was not to determine whether Buckner was entitled to an award of attorney fees. The trial court's March 11, 2025 order plainly states that Hasan "shall pay all costs of this proceeding including attorney fees upon application for said fees[.]" In other words, the sole purpose of the May 1, 2025 fee hearing was to determine the *amount* of reasonable attorney fees. The trial court stated in its entry awarding fees that Hasan nevertheless spent most of her time "focused on the underlying judgment resulting from the concealment action and only asked to clarify the total fees charged in this action." At oral argument, we asked Hasan if she had any basis to challenge either the time

billed or counsel's hourly rates, both of which were established through the exhibits accompanying the fee application and were specifically referenced in the trial court's decision awarding fees. She responded only that she was not sure they were "actually accurate" and that there was nothing to show how they "came up with" the "calculations." But the submissions supporting the amount of attorney fees consisted of itemized bills detailing hours expended, hourly rate, and bottom-line numbers reached through simple arithmetic. Hasan's statements at oral argument amount to a concession that she had no evidentiary basis to challenge the fee award. "Consequently, the trial court's failure to settle the dispute about that evidence cannot be prejudicial." *Associated Estates Corp.*, 11 Ohio App. 3d at 114 (8th Dist. 1983). As this court has stated:

> "[I]t is incumbent upon Defendant to demonstrate how incompleteness in the record precludes effective appellate review. A general assertion that this is so will not suffice. Defendant must demonstrate that effective review will be precluded, and that prejudice will result from the incompleteness of the record. . . . *State v. Williams*, 73 Ohio St.3d 153, 1995-Ohio-275, 652 N.E.2d 721 (1995). Absent an indication that Defendant has been prejudiced by the absence of items from the record, reversible error has not been demonstrated. *Id.*"

*Cleveland v. McGervey*, 2022-Ohio-3911, ¶ 24 (8th Dist.), quoting *State v. Walton*, 2006-Ohio-1974, ¶ 13 (2d Dist.).

{¶ 150} We overrule Hasan's fifth assignment of error.

## C. Fourth Assignment of Error

{¶ 151} In her fourth assignment of error, Hasan challenges the trial court's award of attorney fees, arguing that there was no contractual or statutory authority for such an award and that there was no evidence of bad faith.

{¶ 152} "We review a trial court's decision to award attorney fees for abuse of discretion." *Zele v. Ohio Bell Tel. Co.*, 2025-Ohio-1546, ¶ 34 (8th Dist.), citing *Bittner v. Tri-County Toyota, Inc.*, 58 Ohio St.3d 143, 146 (1991). As discussed above, a trial court "abuses its discretion when it exercises its judgment in an unwarranted way with respect to a matter over which it has discretionary authority." *Hunter*, 2025-Ohio-366, at ¶ 64 (8th Dist.), citing *Johnson*, 2021-Ohio-3304, at ¶ 35. "The term abuse of discretion implies that the court's attitude is unreasonable, arbitrary, or unconscionable." *Hunter* at ¶ 64, citing *Blakemore*, 5 Ohio St.3d 217 (1983). *See also State v. McAlpin*, 2026-Ohio-148, ¶ 14. "[A]n abuse of discretion may be found where a trial court 'applies the wrong legal standard, misapplies the correct legal standard, or relies on clearly erroneous findings of fact.'" *Zele* at ¶ 34, quoting *Thomas v. Cleveland*, 2008-Ohio-1720, ¶ 15 (8th Dist.). "However, 'courts lack the discretion to make errors of law, particularly when the trial court's decision goes against the plain language of a statute or rule.'" *McAlpin* at ¶ 14, quoting *Johnson* at ¶ 39. Accordingly, "[w]e review questions of law de novo." *McAlpin* at ¶ 14, citing *Johnson* at ¶ 38.

{¶ 153} Hasan correctly argues that under the "American rule," a party that prevails in civil litigation is not ordinarily entitled to the recovery of attorney fees as part of the costs of litigation. *See Zele* at ¶ 37. But there are "three well-established exceptions to the rule in Ohio. Attorney fees may be awarded if (1) a statute creates a duty to pay fees, (2) the losing party has acted in bad faith, or (3) the parties contract to shift fees." *Rayco Mfg. v. Murphy, Rogers, Sloss & Gambel*, 2019-Ohio-

3756, ¶ 24 (8th Dist.), citing *Wilborn v. Bank One Corp.*, 2009-Ohio-306, ¶ 7, citing *Pegan v. Crawmer*, 79 Ohio St.3d 155, 156 (1997).

{¶ 154} The concealment statute does not specifically authorize an award of attorney fees, and there is no contract in place that called for shifting of fees. That leaves the subject of bad faith. Courts in other districts "have held that a probate court's guilty finding in an asset-concealment action is 'tantamount to a finding that [the concealer] acted in bad faith and/or for oppressive reasons in concealing the assets.'" *Stewart v. Boland (In re Estate of Probst)*, 2015-Ohio-1712, ¶ 21 (1st Dist.), quoting *In re Estate of Toth*, 1993 Ohio App. LEXIS 5790, *3 (5th Dist. Nov. 29, 1993); *In re Estate of Brate*, 2008-Ohio-3517 (12th Dist.); *Apergis v. Boccia*, 2010-Ohio-2954 (11th Dist.). *See also Hoover v. Wherry*, 1999 Ohio App. LEXIS 2371, at *11 (10th Dist. May 25, 1999) ("A finding of guilt under R.C. 2109.52 is tantamount to a finding that defendant acted in bad faith."). Accordingly, the guilty finding gives the probate court the authority to award attorney fees associated with the prosecution of the underlying action. *Toth* at *3. "In those cases," therefore, "the appellate courts upheld awards of attorney fees, finding no abuse of discretion by the trial courts." *Stewart* at ¶ 21.

{¶ 155} We hold likewise. We have already affirmed the trial court's guilty finding based upon the competent, credible evidence of Hasan's unauthorized conveyance of estate assets without legal authority. The trial court, having found

Hasan guilty, was well within its discretion in awarding attorney fees.[14] Hasan's fourth assignment of error is overruled.

### D. Sixth Assignment of Error

{¶ 156} In her sixth assignment of error, Hasan contends that the trial court erred by approving the sale of the Soika property "without statutory compliance, unanimous informed consent of heirs," or sufficient evidence to justify the sale in the form of, for example, estate debts or other necessity.

{¶ 157} As explained above, we — like the trial court — are constrained to accept the factual findings of the magistrate because of Hasan's failure to comply with Civ.R. 53(D)(3)(b)(iii) in supporting her objections. Our review is therefore limited to Hasan's statutory-construction arguments, which are based on a misinterpretation of the relevant statute.

{¶ 158} Hasan first cites the incorrect statute, referring to "R.C. 2127.01(A)" and "R.C. 2127.01(B)." R.C. 2127.01, however, contains no subsections. Hasan's arguments plainly indicate she intended to refer to R.C. 2127.04(A) and (B).

{¶ 159} Hasan contends that R.C. 2127.04(A) permits a sale "by agreement of all the heirs" when there are no debts. While Hasan is correct that R.C. 2127.04(A) permits a sale "[w]ith the consent of all persons entitled to share in an estate upon distribution," it is agnostic with respect to debts, stating that a sale with

---

[14] While Hasan contends that she was denied due process at the May 1, 2025 hearing, her argument consists of the repetition of both her App.R. 9(C) argument and her claim that she was denied assistance of counsel. We have already considered and rejected these contentions.

unanimous consent is permitted "even though the real property is not required to be sold to pay debts or legacies." *Id.*

{¶ 160} Hasan's summary of R.C. 2127.04(B) is more problematic. She claims it "authorizes sale only if debts require liquidation of assets." (Hasan's brief at p. 17.) That contention is incorrect. The statute actually reads, in pertinent part:

> (B) An executor, administrator, or administrator with the will annexed may commence an action in the probate court, on the executor or administrator's own motion, to sell any part or all of the decedent's real property, *even though the real property is not required to be sold to pay debts or legacies*. The court shall not issue an order of sale in the action unless one of the categories specified in divisions (B)(1)(a), (b), and (c), (B)(2)(a), (b), and (c), and (B)(3) of this section applies:
>
> > (1)
> >
> > (a) At least fifty per cent of all the persons interested in the real property proposed to be sold have consented to the sale.
> >
> > (b) Prior to the issuance of the order, no written objection is filed with the court by any person or persons who hold aggregate interests in the interest of the decedent in the real property proposed to be sold, that total in excess of twenty-five per cent.
> >
> > (c) The court determines that the sale is in the best interest of the decedent's estate.

(Emphasis added.) R.C. 2127.04(B) and (B)(1). In other words, R.C. 2127.04(B) does not state that a sale may be authorized only if debts require liquidation of assets. More importantly, as reflected above, R.C. 2127.04(B) — which was invoked for authorization to sell the Soika property — does not require the unanimous consent of all persons with an interest in the property.

{¶ 161} Hasan's most prominent misunderstanding of the statute is evidenced by her argument that because "A comes before B," one must pass the

unanimous-consent hurdle of subsection (A) before a sale may be authorized. This interpretation would render R.C. 2127.04(B) meaningless. The statute clearly provides alternative means for the disposition of real property where the sale is uncontested (subsection (A)) or partially contested (subsection (B)). Subsection (A) provides a procedural shortcut where all interested parties consent. Subsection (B)(1) has the separate consent and objection thresholds quoted above, as well as the requirement of a finding that the sale is in the estate's best interest. (There are also additional subsections not relevant here.)

{¶ 162} Case law confirms that courts apply R.C. 2127.04(B) without reference to R.C. 2127.04(A). *See, e.g., In re Estate of Eyajan*, 2005-Ohio-351 (11th Dist.) (affirming order of sale pursuant to R.C. 2127.04(B)). *See also Phillipi v. Atzinger*, 2005-Ohio-368, ¶ 31 (5th Dist.) ("If the will does not contain a valid power of sale provision, the executor must follow one of the two procedures contained in R.C. 2127.01 to R.C. 2127.43, which require either court action and approval or the written consent of all the heirs."); *Fifth Third Bank, Natl. Assn. v. Leveck*, 2022-Ohio-546, ¶ 23 (2d Dist.) (same).

{¶ 163} If this were not enough, the Tenth District's description of the 1982 amendment that added R.C. 2127.04(B) puts Hasan's statutory-construction argument to rest. In *Duffy v. Heffernan*, 9 Ohio App.3d 273 (10th Dist. 1983), the Tenth District quoted R.C. 2127.04(B), then newly enacted, and declined to apply it retroactively where the decedent died prior to the amendment's effective date of

February 2, 1982. The court summarized the General Assembly's change to R.C. 2127.04 as follows:

> At the time of decedent's death and at the time her will was admitted to probate, R.C. 2127.04 provided that the executor of an estate with the will annexed could commence an action in probate court for authority to sell any part or all of the decedent's real estate only if all the persons entitled to share in the estate upon its distribution consented to such a sale. *The amendment changed the statute to permit a sale if only fifty percent of all the persons interested in the real estate consented and no more than twenty-five percent of such persons objected.*

(Emphasis added.) *Duffy* at 274.

{¶ 164} The trial court, in adopting the magistrate's factual findings, did not err because Hasan failed to support any fact-based objections by failing to comply with Civ.R. 53(D)(3)(b)(iii). Furthermore, the trial court did not err in applying the law to the magistrate's factual findings. Hasan's statutory-construction arguments are inconsistent with a plain reading of the statute and relevant case law. We overrule Hasan's sixth assignment of error.

### E. Eighth Assignment of Error

{¶ 165} In her eighth assignment of error, Hasan argues that the trial court erred in ruling on her Civ.R. 60(B) motion after she had perfected her appeal to this court, and that the trial court's order denying her Civ.R. 60(B) motion is therefore void.

{¶ 166} We decline to address Hasan's eighth assignment of error as outside the scope of our review. Hasan filed her notice of appeal in the concealment action before the trial court ruled on the Civ.R. 60(B) motion for relief from judgment in that proceeding. "For this reason, her notice of appeal does not (and cannot)

purport to appeal from any ruling relating to that motion." *Heida v. R.M.S./Forest City Ents.*, 2003-Ohio-1357, ¶ 2 (8th Dist.). As this court explained in *Heida*:

> In *Parks v. Baltimore & Ohio R.R.* (1991), 77 Ohio App.3d 426, 602 N.E.2d 674, we held that a court of appeals lacks jurisdiction to review a judgment or order not designated in the notice of appeal. Once the court did deny her motion for relief from judgment, [appellant] was at liberty under App.R. 3(F) to ask us to amend her notice of appeal to incorporate the court's ruling, assuming that she did so within the thirty day time period set forth in App.R. 4(A). But she did not. We therefore lack jurisdiction to review the court's decision to deny the motion for relief from judgment.

*Id.*

{¶ 167} Furthermore, Loc.App.R. 4 specifically contemplates a scenario like this one, where "a motion for relief from judgment or order under Civ.R. 60(B) is pending in the trial court and an appeal from the same judgment is also pending[.]" Loc.App.R. 4(A). In that scenario, a litigant may "move this court, for good cause, to remand the matter to the trial court for a ruling on the motion for relief from judgment." *Id.* "To appeal the ruling on the motion for relief from judgment," however, "a party must file a notice of appeal from that ruling." Loc.App.R. 4(C).

{¶ 168} We acknowledge that Hasan is not requesting that we review the merits of the trial court's denial of her Civ.R. 60(B) motion, but merely to declare it void because the trial court lost jurisdiction after she filed her notice of appeal. We nevertheless conclude that to assert this error, Hasan was required either to file a separate notice of appeal from the trial court's May 30, 2025 denial of her Civ.R. 60(B) motion or attempt to amend her notice of appeal pursuant to App.R. 3(F).

The trial court's denial of Hasan's Civ.R. 60(B) motion is not within the scope of this appeal. We therefore decline to address this assignment of error.

{¶ 169} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
DEENA R. CALABRESE, JUDGE

MARY J. BOYLE, P.J., and
MICHAEL JOHN RYAN, J., CONCUR